# Sloane et al. v. Shiffer, Adm'r et al., Appellants.

*Rescission of contract—Return of consideration.*

A person seeking rescission of a contract must return or offer to return what he has received under it, and thus put the other party as nearly as possible in the same situation in which he was before the contract. This rule, however, is wholly an equitable one, and impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required.

*Rescission of contract on ground of fraud.*

A firm of retail dealers by fraudulent representations induced plaintiffs, wholesale dealers, to sell them goods. Goods were sold at various dates during the succeeding six months. For about two thirds of the goods notes were given. Some of the earlier notes were paid, but the remaining notes and the book account were not paid. The purchasers of the goods confessed judgments to other creditors, and plaintiffs having identified certain of the goods levied upon, notified the sheriff that they had rescinded the contract of sale, and claimed the goods. On an interpleader, the evidence tended to show that the purchasers had received from customers who had purchased some of the goods more than the amount of the notes paid to plaintiffs. *Held,* that plaintiffs were not bound to refund the amounts of the notes paid to them, and that a verdict and judgment in their favor should be sustained.

*Rescission of contract—Tender of unpaid notes.*

In the above case it was held that the tender of the unpaid notes, made on the day of the trial, was not too late.

Where the rights and liabilities of the parties have in no way been changed by the delay, the tender will be treated as if made at the date of rescission.

Argued Feb. 20, 1893.    Appeal, No. 423, Jan. T., 1892, by defendants, J. B. Shiffer, administrator, et al., from judgment of C. P. Lackawanna Co., Nov. T., 1891, No. 94, on verdict for plaintiffs, W. & J. Sloane.   Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Sheriff's interpleader to determine ownership of goods taken in execution.

The facts appear by the opinion of the Supreme Court.

The charge of the court was in part as follows, by SEELY, P. J., of the 22d judicial district, specially presiding :

" [It is argued here that a party may not rescind a contract without placing the other party in statu quo, that is, restoring him to the same position which he would have occupied if the contract had never been made.   I do not think that where the allegation is fraud it is always possible, or always necessary, that the party perpetrating a fraud should be restored to that position.   We think that if a party should obtain credit for a hundred sheep, at a certain price, by representations that were absolutely false and fraudulent, made for the purpose of defrauding and deceiving the seller, although some part of the purchase money might afterwards be paid, and some part of the sheep might be disposed of by the purchaser so that they could not be found, that it would not prevent the courts from rectifying this matter, so far as possible, when the fraud was actually discovered.   We must use care in this matter, but at the same time courts are liberal in their endeavor to protect men against the consequences of fraud and deceit.   At the same time, gentlemen, you must be careful.] [2]

" Now coming to this question, it seems that, prior to the first of April, 1891, the claim for goods sold by Sloane & Co. amounted to $799.54; $533.52 has been paid, leaving $266.02 still remaining unpaid to Sloane & Co.   A part of the goods have been sold, perhaps a larger part; that you must ascertain.   But we

say to you, gentlemen, that if you can find among these goods that are now in the custody of the sheriff, and embraced in this declaration, a part of the goods that were sold prior to the first day of April, not exceeding in amount this sum of $266.02, we think you may find for the plaintiffs for these goods ; that is, in case, of course, that you find that credit was obtained by fraud. So with reference to the goods sold between the 1st of April and the 22d of May. They bought $1,279.83 worth of goods, they have paid $639.92, leaving $639.91 unpaid. [Now if they bought that amount of goods of Sloane & Co., obtained credit for them by fraud, and before the fraud was discovered had disposed of some part of them, and paid for some part of them, we believe that you may apply the payment on account of goods that have been sold by them, and permit the sellers to rescind this contract as to the goods that still remain in their custody, provided they do not exceed the amount for which payment has not been made.] " [3]

Defendants' points were among others as follows :

1. Request for binding instruction. Refused. [1]

" 3. Where a contract of sale is rescinded at all, it must be rescinded in full, and the parties placed in the condition they were before sale. *Answer :* We say that that is not a necessary and absolute rule applying to the case where the rescission is based upon the ground of fraud and deceit. It should be in full, so far as the position of the parties and the circumstances will allow, at the time the fraud is discovered." [4]

Verdict and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were (1-4) instructions, quoting them.

*Samuel B. Price, George M. Watson* and *Walter Briggs* with him, for appellants, cited : 2 Add. Con. § 640, p. 248 ; 1 Add. Con. § 305, p. 446, § 312, p. 452 ; 1 Benj. Sales, § 649, p. 768, 769 ; Ib., p. 530 ; Pearsoll v. Chapin, 44 Pa. 12 ; Pollock, Con. pp. 572, 575 ; Vance v. Schroyer, 79 Ind. 380 ; Morse v. Brackett, 98 Mass. 209 ; Spencer v. St. Clair, 57 N. H. 9.

*Charles H. Welles, John Sparhawk, Jr.,* with him, for appellees, cited : 8 A. & E. Enc. L., pp. 791, 792, 801, 805; Benj. Sales, §§ 502, 504, 518, note 2 ; Clark v. Everhart, 63 Pa. 347 ;

Reed's Ap., 13 Pa. 478 ; Knowles v. Lord, 4 Whart. 500 ; Sill v. Swackhammer, 103 Pa. 7 ; Donaldson v. Farwell, 3 Otto, 631 ; Johnson v. Johnson, 3 B. & P. 162 ; Thurston v. Blanchard, 22 Pick. 18 ; Ryan v. Brant, 42 Ill. 86 ; Bridge v. Batchelder, 9 Allen, 394 ; Nichols v. Michael, 23 N. Y. 264 ; Kinney v. Kiernan, 49 N. Y. 164 ; Stevens v. Austin, 1 Metc. 557 ; Manning v. Albee, 11 Allen, 520 ; Stevens v. Austin, 1 Metc. 558 ; Bridge v. Batchelder, 9 Allen, 394.

OPINION BY MR. JUSTICE DEAN, July 19, 1893 :

H. D. Judd & Co. were retail furniture and carpet dealers in the city of Scranton.   W. & J. Sloane were wholesale carpet dealers in New York.   Judd & Co. had made occasional purchases from them for two or three years prior to Feb. 11, 1891. On that day H. D. Judd called at Sloane's place of business in New York for the purpose of buying goods, and also opening an account by which goods could thereafter be got when ordered on credit.   He was referred to Richard W. Ievers, the manager of the credit department.   In reply to questions, Judd stated in writing that his firm on the 1st of January previous had a stock of goods in their store at Scranton worth over $20,000 ; good accounts receivable, over $6,000 ; making assets $26,000.   That they were indebted for merchandise less than $8,000, and owed no borrowed money in bank or otherwise. On these representations, Sloanes opened for them a line of credit which was kept up to August 8th following, during which time there were shipped, at different dates, goods to the value of $3,287.77.   From February 24th to March 16th, the purchases amounted to $799.53 ; for this, three notes, dated March 28th, each in sum of $266.51, at three, four and five months, were given.   From April 3d to May 22d the purchases amounted to $1,279.84 ; for this, three notes, dated June 15th, were given ; one at 30 days for $319.96 ; one at 45 days for a like sum, and one at three months for $639.91 ; then, from June 8th to August 8th, there was a book account, for which no notes were given, amounting to $1,091.68.

On August 21st, Judd & Co. confessed judgments to a number of creditors, most of them near relatives, to whom they were indebted for money borrowed before the interview with Mr. Ievers on Feb. 11, 1891, in the aggregate sum of $17,241.

On these judgments executions were at once issued, and the sheriff took possession of the stock of goods in the Scranton store. Learning of this, Ievers went to Scranton, when, as alleged, he not only discovered the large indebtedness for borrowed money, but also that instead of an indebtedness of less than $8,000 for merchandise, it was about $16,000. Some of the goods, about one third of those shipped by Sloanes, were still in the store. As to these, Ievers gave notice to both Judd & Co. and the sheriff that Sloanes rescinded the contract and reclaimed the goods because of alleged fraud by Judd & Co. in the purchase.

On the petition of the sheriff, an issue was framed between Sloanes, plaintiffs, and the execution creditors, defendants, to determine the ownership. The questions as to whether there was such fraud as warranted the rescission of the contract, and whether the goods sought to be reclaimed were identified as part of those purchased from Sloanes, were submitted to the jury, and found in their favor. From the judgment entered on this verdict, the execution creditors, Shiffer and others, take this appeal.

The appellants' assignments of error are to the charge of the court on the facts necessary to a legal rescission. As has been stated, the whole amount of purchases under the contract of Feb. 11, 1891, was $3,287.77; two of the $266.51 notes given March 28th were paid when they matured, also two of the $319.96 notes given June 15th; these, with some goods returned, made the entire payments $1,289.66, leaving an unpaid balance of $1,998.11, represented by the five months' note of March 28th for $266.51, the three months' note of June 5th for $639.91, and the unpaid book account from June 8th to Aug. 8th of $1,091.68. This left the situation as to the goods on Aug. 23d, the date of rescission, as follows: Of the goods purchased up to March 16th, $533.02 had been paid for, and $266.51 had not been paid; of those purchased from that date up to May 22d, $639.92 had been paid, and $639.91 had not been paid; none of the goods in the book account bought after that date had been paid for. The goods identified and reclaimed by Sloanes did not exceed in value $900, leaving them, even if the rescission was effectual as to these, losers to the amount of more than $1,000. But it is

argued by appellants that part of the goods reclaimed were included in the bills settled for by the notes, and that as to these, or any portion of them, there can be no rescission without a return of the money and the unpaid notes given for these bills.

That a party seeking rescission of a contract must return or offer to return what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law: 1 Addison on Contracts, § 305; 1 Benjamin on Sales, 530. But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required. If Sloanes did all that was possible and could reasonably be required of them, under the circumstances, to reclaim their goods, the title of Judd & Co. to such of them as they identified was gone. The jury has found that, by a gross fraud practiced, they parted with the possession; this gave them the right to rescind by restoring or offering to restore the purchasers, as nearly as it was possible or reasonable to do so, to their position before the contract. Before reclaiming goods included in the bills settled for by the notes of March 16th and June 15th, they were not required to refund all the money received by them, if the evidence showed that from sales already made Judd & Co. had been reimbursed for all they had paid. The evidence tended to show that Judd & Co. had received on sales to their customers out of the 16th March bills $136.17 more than they had paid on the two matured notes, yet the goods reclaimed on this lot amounted to only $130.35. While Judd & Co. could claim to be made whole on a rescission, they had no right to profit by their fraud; to have given them back all they had paid would have made them large gainers. And so with the bill settled June 15th; two of these notes amounting to $639.92 had been paid; Sloanes identified, out of this lot, goods to the value of only $336.07. Judd & Co. had already received by sales to innocent purchasers $303.84 more than they had paid on these two notes. They had not only, in effect, been reimbursed, but had largely profited at the expense of Sloanes. Certainly, equity did not require that the party wronged should pay back to the wrongdoer money which he, the wrongdoer, already had in his pocket. The appellants'

contention, that the defrauded vendor cannot take back what he gave without giving up what he got, is sound, but the verdict of the jury on competent evidence establishes that Judd & Co. got back, in effect, far more than they paid out of each bill of goods, and that there was no reclamation of any goods which were in fact paid for.

As to the allegation that the tender of the unpaid notes at time of trial was too late, we are of the opinion that, in an interpleader issue, where the rights and liabilities of the parties have in no way been changed by the delay, the tender will be treated as if made at the date of rescission. If the sheriff had disregarded the notice, and proceeded with the sale, on an action of trespass against him, he might have successfully asserted that the rescission had not been complete before the sale, and the title to the goods was still in the fraudulent vendees. But where the offer to restore is made, and the notes filed before trial of an issue to determine the ownership, the rescission is consummated before verdict, and the right of no one is prejudiced. The court committed no error in assuming the tender of the notes was in time.

What we have said disposes of all four of appellants' assignments of error. The instructions of the learned court below to the jury, although more elaborate, in substance accord with this opinion, and were a correct statement of the law bearing on the facts.

The judgment is affirmed, and the appeal is dismissed at costs of appellant.

Cf. next case, and Boyd, White & Co. v. Shiffer, below, p. 100.