Cf. next case, and Boyd, White & Co. v. Shiffer, below, p. 100.

---

## Schofield et al. *v.* Shiffer, Adm'r, et al., Appellants.

*Sale—Rescission—Tender of money received.*

In order that a vendor may rescind a contract of sale of chattels, he must return to the purchaser any money paid, and must relinquish any advantage gained by the contract.

*Sale—Rescission—Fraud—Reclamation of part of goods.*

Where goods are sold under fraudulent representation, and are all delivered under one contract of sale, the vendors may rescind the contract without tendering to the vendees the portion of the purchase money paid, if it appears that the value of the goods reclaimed does not exceed the balance due the vendors.

*Rescission—Standing of execution creditors of vendee.*

The execution creditors of the vendee of goods have a standing to contest the right of the vendors of the goods to rescind the sale on the ground of alleged fraudulent representations.

*Tender of unpaid notes.*

The rights of vendors of chattels to rescind the sale on the ground of fraudulent representations, is not defeated by a failure to tender back notes given for the purchase money, if in interpleader proceedings between the vendors and the vendee's execution creditors, the vendors file the notes in court before the verdict is rendered.

*Evidence—Scheme to defraud—Statements to other dealers.*

In interpleader proceedings between vendors of goods claiming to rescind a sale and the vendee's execution creditors, it is proper to admit in evidence false written statements of the vendee's business standing submitted to other dealers beside the vendors, in order to show a general fraudulent scheme to obtain a large amount of goods from various dealers, and that the purchase from the vendors was only a small part of the larger scheme.

Argued Feb. 21, 1893. Appeal, No. 111, Jan. T., 1893, by defendants, J. B. Shiffer, Administrator, et al., from judgment of C. P. Lackawanna Co., Nov. T., 1891, No. 220, on verdict for plaintiffs, Schofield, Mason & Co. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Sheriff's interpleader to determine ownership of goods.

The facts appear by the opinion of the Supreme Court.

At the trial, before SAVIDGE, P. J., of the 8th judicial district, specially presiding, plaintiffs offered in evidence the following papers:

" Statement of H. D. Judd & Company. Standing January 20, 1891 : Stock $19,460.37 ; cash $452.44 ; good accounts $6,476.50. Total $26,389.31. Liabilities : Notes due, 30, 60 and 90 days, $3,228 ; open accounts $3,194.48 ; no judgments ; no borrowed money ; no preferences ; insured $16,000. Hoping this will be satisfactory, I am yours truly,

"H. D. JUDD,
" For H. D. JUDD and H. B. JUDD."

" H. D. Judd & Company, furniture and carpet dealers, 133 Franklin Avenue.

"Scranton, Pa., July 1, 1891."

" Boyd, White & Company:

" Gents: In answer to yours we send the following: Stock on hand $22,000. Good accounts $6,000. Total $28,000. We owe accounts, $8,000. We have no real estate, no judgments against us, buy goods of E. R. Artman, Trachler Company, W. & J. Sloane & Company.

(Signed)      " H. D. Judd & Company."

These exhibits were admitted under the following offer, objection and ruling:

By Mr. Torrey: We renew the offer of the statements made to Doernan Brothers and to Boyd, White & Company.

By Mr. Watson: We object to this offer upon the ground that the first one has not been properly identified as a statement, and that there is no evidence that it was given for the purpose of obtaining credit; and the other one is a statement made several months after the former statement, or the statement upon which this fraud is alleged to have been made; and it is too remote to have any bearing upon this case.

By the Court: We think this will be some evidence to go to the jury upon the intent with which the statement was sent to Schofield, Mason & Company by the witness. We will admit the statements. Exception. [1]

The court charged in part as follows :

" Now, gentlemen, I charge you that, if Judd & Company made these representations (and they were bound to know the verity of the representations they were making), for the purpose of procuring these goods, and if you find that the representations were false, and that Schofield, Mason & Company shipped this carpet on the strength of these representations, then you would be warranted in finding that this was a fraudulent transaction on the part of Judd & Company. You have heard the testimony of the witnesses, their character and credibility is for you. You have heard the record testimony that has been offered in evidence, and it is for you to determine what is the truth of this matter, whether this transaction was a fraudulent transaction on the part of Judd & Company. And I charge you, that if you so find that it was a fraudulent trans-

action, then as soon as Schofield, Mason & Co. found the nature of the transaction, discovered the fraud that had been practiced upon them, they had a right to rescind this contract. If you find that it was not a fraudulent transaction, that the transaction was in good faith, that the representations were not false and fraudulent, or that the goods were not parted with on the strength of these representations, then your verdict ought to be for the defendants, and that would be the end of this case. And that is the first question for you to determine, and it is a question, as I said, of fraud, and it is for you, and you must settle it according to the weight of the testimony. [But if you find that the transaction was fraudulent, then, as I have just said, they had a right to rescind this contract, and they had that right, I charge you, notwithstanding Schofield, Mason & Co. had accepted notes in payment of a portion of the carpet shipped.] [2]

" [And I further charge you that Schofield, Mason & Co. were not obliged, before rescinding this contract, to tender back to Judd and Company the amount of money already paid on account of the goods shipped them.] [3]    [And I further charge you that they were not obliged to tender the notes, because they were mere promises to pay, and having rescinded they could not collect them, and they are in ample time in tendering them here in court on the trial of the case.] [4]

" Now, if you find this transaction was fraudulent, then there is still another question for you to determine. These goods were shipped to Scranton, put in the store of Judd & Company, were on the market; they were retailers as I understand it, and quantities of this carpet had, between the times of the receipt of the goods by Judd & Company and the date upon which it was levied on by the sheriff, been sold. From the very nature of the case it was impossible for Schofield, Mason & Company to receive back their carpet in its entirety as they had shipped it to Judd & Company. When a party elects to rescind a contract such as this, they are bound to put the other party, as nearly as may be, in the identical situation that he was at the time of the alleged fraudulent transaction, if it is within their power to do so. But you will see from the nature of this case that this would be utterly impossible, and what you are to try and do now, and are to do as best you can under the evidence

in the case, and the charge of the court, is to put these parties as nearly as you can in statu quo.   [In case you find that this was a fraudulent transaction, and there was a rescission of this contract, then you are to try and put them as nearly as possible in the position that they were at the time of this alleged fraudulent transaction as you can.   And I know of no better way of solving this question than for you to determine, if you can, what proportion of the goods remained upon the premises at the time of the sheriff's levy.   If you find that a greater proportion in value of the whole amount shipped was claimed by Schofield, Mason & Company, than the amount still unpaid on the original purchase money bears to the whole amount of the purchase money, then your verdict ought to be—always providing you find this transaction was fraudulent, of course—in favor of the plaintiffs in this issue, for such an amount of the carpet claimed as would represent the proportionate amount of the whole bill still unpaid.

"Now, there is some evidence in this case from which you may try to arrive, and will endeavor to arrive at a just conclusion in this regard : You have from the invoices the whole amount of carpet shipped.   Those invoices are in evidence, and you have the number of rolls and the number of yards in a roll, and the prices per yard.   Then you have the schedule attached to the notice to the sheriff which was offered in evidence, containing also the number of rolls and the estimated number of yards on hand at the time of the claim made by the plaintiffs in this case.] [5, 6]

" In case you find this was a fraudulent transaction, and there was a rescission of it, then you should find for the plaintiffs for the amount of goods which would represent the balance of the purchase money still unpaid, as I have just said to you, and if you find there are more goods there, more goods claimed by them than would represent the balance of the unpaid purchase money, then you ought to find for the defendant for any such surplus of the goods set apart at the time of the claim made by the plaintiffs."

Verdict and judgment for plaintiffs.   Defendants appealed.

*Errors assigned* were (1) ruling on evidence, (2, 6) instructions ; quoting instructions, bill of exception and evidence.

*George M. Watson, Walter Briggs* with him, for appellant, cited : Pearsoll v. Chapin, 44 Pa. 12.

*James H. Torry, John Sparhawk, Jr.,* and *John P. Albro* with him, for appellees, cited : Nichols v. Michael, 23 N. Y. 264 ; Wiswall v. Harriman, 62 N. H. 671 ; Thurston v. Blanchard, 22 Pick. 18 ; Babcock v. Case, 61 Pa. 427 ; Stevens v. Austin, 1 Metc. 557.

OPINION BY MR. JUSTICE DEAN, July 19, 1893 :

This case is not very different in the questions raised from that of W. & J. Sloan against the same defendants, argued and decided at this term [the preceding case].   The charge of the learned judge of the court below, to which there are five assignments of error, taken as a whole, was a correct and full statement of the law on the evidence.   That part of it embraced in the third assignment, standing by itself, not read in connection with what precedes and follows it, and leaving out of view the undisputed facts, is certainly error.   It is as follows :

" And I further charge you that Schofield, Mason & Co. were not obliged, before rescinding this contract, to tender back to Judd & Co. the amount of money already paid on account of the goods shipped them."

It is settled, both by reason and authority, that a vendor, to rescind a contract for the sale of chattels, such as the one in question, must return what he has received on the bargain. The title and possession are both in the vendee by the voluntary act of the vendor, who has the option to rescind or to bring his action on the contract.   If he elect to rescind, his election must be indicated by unmistakable acts significant of the intention.   The vendee must, in effect, have returned to him any money paid, and the vendor must relinquish any advantage gained by the contract.   If this be neglected, the neglect is a continuous affirmance of the contract, and the law does not countenance double dealing ; does not permit the vendor to both affirm and disaffirm ; to do so, would be to allow him to offset the fraud upon himself by perpetrating another on the vendee.   There is scarcely the semblance of diversity of opinion among the text writers on this question, and very rarely contradictory decisions in the courts : 3 A. & E. Enc. of Law, 930,

and notes.   This being so, the statement in the charge, constituting appellants' third assignment of error, would seem to be in direct conflict with the law.

But it must be kept in mind that the whole of these goods, although delivered at different dates, were purchased at one time ; there were not separate sales of separate parcels at different dates, but just one transaction made on the faith of the alleged false representations.   On the 15th of January, 1891, Judd, accompanied by his buyer, McCoy, called at plaintiffs' place of business, and made selections and purchases of carpets to the value of $1,882.85.   Plaintiffs delayed shipping until they received a written statement from Judd & Co., on 20th of January, of their financial condition.   This turned out to be grossly false, but, relying on it, they commenced shipping the goods and continued so to do up to May 4th, when the entire bill was completed.   On February 16th, $1,438.35 worth of the goods had been delivered, for which were taken three notes, each in the sum of $479.45, payable respectively in 60 days, four months and five months ; two of these notes were paid, and one was not paid.   On the 4th of May another settlement was had for the balance of the bill, $444.40, for which a note at 60 days was taken.   This note was not paid; making paid of the whole purchase $959.03, and leaving unpaid $923.85, represented by the two unpaid notes.   This was the situation on the 21st of August, when Judd & Co. confessed judgments to other creditors for more than $17,000, on which executions were at once issued, and the entire stock of goods, furniture and carpets, was seized by the sheriff.   Then plaintiffs rescinded the contract and reclaimed such of their goods as could be identified as part of the purchase of the 15th of January, without tendering the money received, or the unpaid notes.

From the evidence, we fail to see, as is so earnestly argued by appellants' counsel, that such reclamation was impossible or illegal without such tender.   While the evidence shows a number of shipments running from 23d of January to 4th of May, and two settlements, there was but one purchase of the entire bill on 15th of January, when Judd and McCoy called at plaintiffs' place of business in Philadelphia, and but one set of false representations, those made in writing on 20th of January, on the faith of which all the shipments were made.   Being then

but one transaction, the whole of it is alike tainted with fraud; it is impossible to separate the bills, and say that one part was paid for by honoring the two notes, and that the goods thus paid for could not be reclaimed without tendering the money paid. Goods in the store, purchased before the 20th of January from plaintiffs, could not be substituted for those purchased under the alleged fraudulent sale; nor if there had been several sales as well as several separate bills, some paid and some unpaid, could goods paid for be substituted for those not paid for. This, however, being a single transaction, as one of the witnesses states, the " whole lumped together," to relieve plaintiffs from the tender, it was only necessary for them to show that the goods reclaimed were a part of those sold on the fraudulent representations, and that their value did not exceed the balance due them on the whole sum of that sale. Both facts, under very clear instructions from the court, were found in their favor. This being the case, Judd & Co. had already received back in goods, which presumptively they had already disposed of, the $959.03, amount of the two notes paid; they had no right to receive the money twice, which would have been the case if plaintiffs had paid it to them. This, taking the whole charge of the court and its reference to the evidence, is what was meant, and what without doubt the jury understood from it. And it is the only ground on which the judgment can be sustained. To have held, as argued by the learned counsel for appellees, that the execution creditors, these appellants, had no standing to insist on a return of the money paid; that Judd & Co. alone could require it as a condition precedent to a rescission, would have been error. These creditors have just the right, and no less, of their debtors, Judd & Co. It is only because they have no higher one that plaintiffs have the right to rescind at all; Judd & Co.'s title to the goods, and consequently the creditors' right to appropriate them in payment of their debts, remains, until the defrauded vendor has made void that title by an effectual rescission of the contract which vested it in them. Standing in their debtor's shoes with a grasp on their goods, they can legally and equitably say to the vendor, who seeks to reclaim them on the ground of fraud, " You must do all that the law requires to make void the debtor's title, before you can ask us to relinquish them." To hold that exe-

cution creditors have no standing in court to assert the title of their debtor against an assumed defrauded, yet unsecured vendor, would be to invite fraudulent claims on the goods of every failing debtor.

As to the unpaid notes, the court was right in holding that in this form of issue, between these parties, a tender of and filing them in court before verdict was sufficient. When this was done, any possible prejudice to the right of Judd & Co. was guarded against, and they were put in the same situation as before the contract.

As to the alleged error in the admission in evidence of written statements made by Judd & Co. to Doerman Brothers and Boyd, White & Co., embodying representations of like character with that to plaintiffs on 20th of January, we think they were properly admitted. They were corroborative evidence of intent to defraud these plaintiffs, because tending to show a general scheme on part of Judd & Co., by false representations to wholesale dealers, to fraudulently accumulate goods purchased on credit. They were not admissible to prove that, as they had made false statements to others, therefore they had made false statements to plaintiffs; but it was shown beyond dispute they had made a false statement to plaintiffs, and had got, over and above what they paid for, about $1,000 worth of goods; defendants might have argued, with some force, that there was no intent to defraud, because the profit was but small; therefore, to show more clearly the fraudulent intent, plaintiffs could give evidence that the purchase from them was only a small part of a larger scheme; that the object was to get, not a single thousand dollars worth of goods on credit, but many thousand dollars worth by like false representations to others about the same time, and that the scheme was successful.

What we have said covers all of merit in the assignments of error; they are overruled; the judgment is affirmed, and appeal dismissed at costs of appellant.