[No. 12983.   Department One.   July 11, 1916.]

PIERCE COUNTY AUTO COMPANY, *Appellant*, v. J. A. MENARD, *Respondent*.[1]

SALES—RESCISSION—FRAUD — CONDITIONS PRECEDENT—RETURN OF CONSIDERATION. A restoration of the consideration for goods, fraudulently sold by the secretary of a company without authority, is not a condition precedent to an action to set aside the sale for fraud, where, by fraudulent concealment, the vendee induced the company to give him credit on his indebtedness equal to the amount paid as the price of the goods.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered February 11, 1915, upon findings in favor of the defendant, in an action of replevin, tried to the court.   Reversed.

*Davis & Mathis* and *Fitch, Jacobs & Arntson*, for appellant.

*Fletcher & Evans*, for respondent.

FULLERTON, J.—This is an action in replevin, brought by the Pierce County Auto Company against J. A. Menard to recover certain machinery and tools claimed to have been sold Menard by the company's secretary without authority from the company.   The cause was tried by the court sitting without a jury, and resulted in a judgment in favor of Menard.   The company appeals.

The court made the following findings of fact:

"(2) That at some time prior to the commencement of this action, one F. M. Russell, the then secretary of the plaintiff company, executed and delivered a bill of sale in the name of the plaintiff of all the personal property described in the complaint in this action (save and except the Universal Grinder described therein) to the defendant.   That said bill of sale was executed and delivered by the said Russell without the knowledge or consent of any of the other officers of

[1]Reported in 158 Pac. 729.

the company. That said Russell had no power or authority to make the same and that the defendant Menard at the time he received the same knew that the said Russell had no power or authority to make the same.

"(3) That on or about the 7th day of August, 1914, defendant Menard drew his check payable to the Pierce County Auto Company for the sum of $225 and handed the same to the said Russell; that Russell in the presence of Menard handed the same to the bookkeeper of the plaintiff company and the same was credited to the account of Menard and that the said account of Menard was not at any time debited with the alleged purchase price of the machinery in issue in this cause.

"(4) That on or about the 16th day of October, 1914, without the knowledge or consent of any officer of the company, said defendant, Menard, took the machinery in question from the premises of the plaintiff company and removed the same to the Northern Pacific Railway Company depot in Puyallup, Wash., where he ordered the same shipped to his own order at Seattle, Wash.

"(5) That demand was made upon Menard for said machinery prior to the commencement of this action.

"(6) That the plaintiff had no knowledge of the making or existence of the bill of sale referred to in the second finding herein at any time prior to the removal of the property from the premises of plaintiff, on or about the 16th day of October, 1914, save and except the knowledge of its acting secretary, Russell, who made the same, and the court finds that Russell and Menard were acting in collusion with each other and for the purpose of keeping the real transaction from becoming known to the plaintiff and its officers.

"(7) That from the said books of the company it appeared at the time this action was brought that Menard was indebted to the company and not the company indebted to Menard, but this state of accounts is disputed by Menard.

"(8) That the value of said property is the sum of six hundred dollars.

"(9) The court finds that on the 7th day of August, 1914, F. M. Russell, secretary and treasurer of plaintiff company, sold for said company to J. A. Menard, defendant in this action, the following machinery: [describing it] for which said Russell executed a bill of sale in the name of the plaintiff to J. A. Menard for an express consideration

of $225 which said sum of $225 was paid by the said J. A. Menard to the plaintiff company on the 7th day of August, 1914, and retained by it.

"(10) In this action the plaintiff seeks to avoid said sale and procure a return of said property, and the court finds that said plaintiff company received said $225 and has never at any time tendered a return of said $225 to said J. A. Menard."

The evidence, while to some extent contradictory, we think fully justifies the findings made by the trial court. We think, also, that it would justify findings to the effect that the personal property described is and was a part of the equipment used by the appellant in the conduct of its business, and not merchandise carried for sale by it; that, at the time of the commencement of the action, the appellant was not indebted to the respondent in the sum of $225, or indebted to him at all; and that, just prior to the time the property was taken by the respondent, he assisted in taking an inventory of the appellant's stock and fixtures to ascertain the sale value of its stock, which his fraudulent vendor was then about to make, and that to his knowledge the machinery and tools which he afterwards sought to take were included in the inventory as a part of the property of the appellant.

The trial judge rested his judgment on the principle that one who seeks to set aside a sale on the ground of fraud or other legal reason must return, or tender a return, to the purchaser the consideration paid for the property. But to this rule there are many exceptions. For example, he is not bound to return a thing received in consideration that is utterly worthless; nor is he bound to return the consideration when the property sought to be recovered has been rendered less valuable by use or waste; nor is he bound to return the consideration when the value of the goods does not exceed the balance due the vendor; and, generally, as was said by the court of appeals of New York in *Kley v. Healy*, 127 N. Y. 555, 28 N. E. 593, ". . . one who attempts to rescind a transaction on the ground of fraud is not required to restore

that which in any event he would be entitled to retain either by virtue of the contract sought to be set aside, or of the original liability." See, also, *John V. Farwell Co. v. Hilton,* 84 Fed. 293, 39 L. R. A. 579; *Henry L. Crane Boot & Shoe Co. v. Trentman,* 34 Fed. 620; *Friend Bros. Clothing Co. v. Hulbert,* 98 Wis. 183, 73 N. W. 784; *Sisson v. Hill,* 18 R. I. 212, 26 Atl. 196, 21 L. R. A. 206; *Sloane v. Shiffer,* 156 Pa. St. 59, 27 Atl. 67; *Schofield v. Shiffer,* 156 Pa. St. 65, 27 Atl. 69.

The rule that requires a restoration of the consideration as a condition precedent to vacating a fraudulent or voidable sale of goods had its origin in equity. It was not thought just that the vendor should have both the goods and the consideration. But equity is all that the vendor is required to do. Here, the vendee, prior to the time he attempted to take the property, had by his acts of concealment induced the vendor to return to him a sum equal to the amount paid as the purchase price of the goods. No principle of equity or justice required that it be returned a second time as a condition precedent to an action to avoid the sale.

The judgment is reversed, and the cause remanded with instructions to enter judgment for the plaintiff.

MORRIS, C. J., MOUNT, ELLIS, and CHADWICK, JJ., concur.