## Smith *v.* Citizens Insurance & Mortgage Co., Appellant.

*Corporations—Sale of stock—Agreement to repurchase—Principal and agent—Repudiation of act of agent.*

1. A strictly private corporation has the right to agree to repurchase within a given time stock subscribed for, provided the agreement will not work to the disadvantage of creditors or other stockholders.

2. If a person purchases corporate stock and at the same time receives from persons purporting to be agents of the company a written agreement signed in the name of the company to repurchase the stock at the expiration of thirty days, and thereafter the company repudiates the act of the agents in signing the agreement, the purchaser may rescind the contract of subscription.

3. In such case, the fact that a certificate of the stock is placed in the subscriber's name and delivered to him, is immaterial, if he offers to return it.

Submitted October 1, 1925. Appeal, No. 90, March T., 1925, by defendant, from judgment of C. P. Jefferson Co., Jan. T., 1922, No. 151, on verdict for plaintiff, in case of McCurdy Smith v. Citizens Insurance & Mortgage Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit to recover back purchase money paid on stock subscription. Before CORBET, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $3,372. Defendant appealed.

*Error assigned* was refusal of defendant's motion for judgment n. o. v., quoting record.

*J. S. Fisher* and *E. O. Golden,* for appellant.

*Raymond E. Brown, Charles J. Margiotti* and *W. M. Gillespie,* for appellee.

PER CURIAM, November 23, 1925:

Defendant, Citizens Insurance & Mortgage Company, a corporation, appeals from a judgment on a verdict in an action brought against it by McCurdy Smith, to recover the consideration paid by him on a conditional subscription for 200 shares of the corporation's capital stock; the suit is based on a rescission of the contract because of defendant's refusal to abide by its terms.

Plaintiff was a stockholder of defendant company, and, on October 12, 1921, it wrote to him that an increase in the price of its shares, from $15 to $17.50 each, was warranted and would occur in the near future, but the company felt it only fair to its then present stockholders first to give them an opportunity of buying this additional stock at the old price, and indicated that its representatives would shortly call upon him. Fourteen days later, plaintiff was visited by two men, named Myers and Simmons, who delivered to him a check of defendant for a quarterly dividend due on fifty shares of its stock, which plaintiff then owned; they said the company would guarantee to sell for $17.50 per share, at the expiration of thirty days, any new stock purchased by him, and, further, that his allotment of such stock would amount to 200 shares, at a cost of $3,000. Plaintiff requested a written guaranty of resale at the advanced price, and, to this end, he was given a paper as follows: "October 26, 1921, The Citizens Insurance Agency & Mortgage Company hereby guarantees to sell for Mr. McCurdy Smith two hundred shares of Citizens Insurance Agency & Mortgage Company stock at $17.50 per share, at the expiration of thirty days from date." This was signed, "Citizens Insurance Agency & Mortgage Company, By Myers & Simmons."

Plaintiff said he paid the agreed purchase price on the delivery to him of the above contract. Thirteen

days later, and before a stock certificate had been delivered to plaintiff, he telephoned to defendant's vice-president and treasurer and inquired whether his stock subscription had been received; on being advised that it had, he stated to this officer the substance of the agreement in relation thereto which had been executed by Myers and Simmons, and said he would not accept the stock except on the conditions named in that contract. The following day, plaintiff called at the office of defendant company and interviewed the same official, exhibiting to him the writing executed by Myers and Simmons as its agents. Defendant's vice-president and treasurer admitted at this interview that his company had received the subscription money, but stated that its agents were not authorized to make the resale agreement. On being so advised, plaintiff said that, if the company did not propose to carry out the terms of the agreement upon which he had subscribed for his stock, he would withdraw his subscription and require the return of his $3,000. Up to this time the stock certificate had not been issued to plaintiff. On his way home, plaintiff interviewed the president and another vice-president of defendant corporation; he informed them also of the terms on which he had subscribed for its stock and that unless the company intended to comply with the resale agreement, he withdrew his subscription. Three days later plaintiff received by mail a certificate for 200 shares of defendant company's stock. Thereupon he wrote to defendant tendering a return of the stock and making a demand for the repayment of the purchase money. Subsequently, plaintiff received by mail checks of defendant payable to his order for dividends declared on the stock in question, all of which checks he returned by registered mail to the corporation, and commenced the present action.

While, in its affidavit of defense, appellant denied the agency of Myers and Simmons and practically all else in plaintiff's case, yet it not only produced no evidence

at the trial, but, in its points for charge, took the position that, since plaintiff had "purchased the stock under a guarantee or agreement to resell at the expiration of thirty days" and defendant had *"ratified and confirmed* the agreement to resell, as made by [its] alleged agents," plaintiff "had no right to rescind" such contract or to "recover in this form of action." But as said by the court below in its opinion refusing to enter judgment n. o. v., this position "leaves out of view the evidence that defendant refused definitely to perform" its resale part of the subscription contract, thus giving plaintiff the right to "rescind his part of the deal and recover" in the present form of action.

We also agree with the court below that, under the circumstances here presented, "the mere coming into the hands of the plaintiff, and remaining there, of the stock certificates, without any intention on his part of accepting ownership of the stock, would not ipso facto require as a matter of law that he be declared, against his will, owner of the stock, and that, under the circumstances,......the proffered return of the certificate was all that was required."

A strictly private corporation, such as defendant, has the right to agree to repurchase within a given time stock subscribed for, provided the agreement will not work to the disadvantage of creditors or of other stockholders (Wolf v. Excelsior A. S. & S. Co., 270 Pa. 547, 549), and there is nothing on this record to show that the agreement with plaintiff, which is in the nature of a contract to repurchase, would injure or prejudice either creditors or other stockholders. Under these circumstances, upon defendant's repudiation of the resale features of the subscription contract, plaintiff had a right to rescind it and to recover his purchase money. The judgment must be affirmed, but the court below should make an order that the stock certificates shall be deposited in court for return to defendant either upon payment of the judgment or its realization by execution:

see George v. Braden, 70 Pa. 56, 57; Schofield v. Shiffer, 156 Pa. 65, 73.

The judgment is affirmed and the court below is directed to enter an order as above suggested.