The FIRST NATIONAL BANK & TRUST COMPANY IN MACON, Plaintiff and Counter-Defendant,

v.

AMERICAN SECURITY & TRUST COMPANY, Defendant and Counter-Plaintiff.

Civ. A. No. 76–1814.

United States District Court, District of Columbia.

July 29, 1977.

James J. Bierbower, Bierbower & Rockfeller, Washington, D. C., Frank C. Jones, Jones, Cork, Miller & Benton, Macon, Ga., for plaintiff-counter-defendant.

Martin J. Flynn, Shea & Gardner, Washington, D. C., for defendant-counter-plaintiff.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

The First National Bank & Trust Company in Macon ("First Macon"), a national bank in Georgia, filed the original complaint in this case against American Security & Trust Company ("AS&T"), a national bank in Washington, D. C., for specific performance of a settlement agreement. AS&T subsequently filed a counterclaim for rescission, claiming that First Macon committed fraud in inducing AS&T to enter into the agreement; AS&T also raised fraud as a defense to its non-compliance with certain of its contractual obligations.* First Macon has now moved to dismiss the counterclaim and to strike the defense of fraud on the ground that AS&T has failed to offer to restore to the Georgia bank the benefits AS&T has received under the agreement. First Macon has also moved for dismissal of the counterclaim for lack of venue.

AS&T claims that tender is not necessary under the circumstances of this case, and also that this Court in fact has venue jurisdiction over the counterclaim. It is these issues which the Court must decide at this time.

### I.

The motion to dismiss the counterclaim for lack of venue must be denied. First Macon's argument is that it is a national bank and that venue in a suit against such a bank is governed by 12 U.S.C. § 94 (1970). That section provides, in relevant part, as follows:

> Actions and proceedings against any [national bank] may be had in any district or Territorial court of the United States held within the district in which such [bank] may be established . . . .

■ The plaintiff claims that this section applies to counterclaims as well as to original claims and that, therefore, the counterclaim can only be brought in the district where First Macon is established, which is the Middle District of Georgia.

At least with regard to mandatory counterclaims, which AS&T's claim concededly is, the Court does not agree.

■ The purpose of 12 U.S.C. § 94 is to limit the inconvenience that the national bank must suffer in defending itself, particularly the disruption that would be caused by transferring important bank records to distant courts. *First National Bank of Charlotte v. Morgan*, 132 U.S. 141, 145, 10 S.Ct. 37, 33 L.Ed. 282 (1889). Whenever the action against the national bank is a counterclaim, however, the general inconvenience to the bank is diminished substantially. And when the counterclaim is a mandatory one—that is, one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," Fed.R.Civ.P. 13(a)—the records relevant to the counterclaim will in all likelihood be needed in the distant court in any event. In these instances, then, the inconvenience of the bank's having to defend itself in a distant forum is virtually nonexistent.

■ On the other hand, the purpose of having mandatory counterclaims is to have all related claims adjudicated in a single forum. If 12 U.S.C. § 94 applies to such counterclaims, then this policy will often be thwarted for what appears to be no compelling reason. The Court cannot ascribe such an intent to Congress, and concludes that section 94 does not apply to mandatory

---

* AS&T has also raised three other defenses: general denial, failure to state a claim upon which relief can be granted, and breach of contract by First Macon.

counterclaims. Accordingly, the Court holds that it has venue jurisdiction over the counterclaim.

## II.

### A.

The motions to dismiss the counterclaim and to strike the defense of fraud for failure of AS&T to tender back the benefit it has received under the contract also must be denied. The relevant facts, as they appear at this early stage, are these:

In August of 1973, Halbern Industries, Inc., and its subsidiaries went bankrupt. At the time, these corporations were heavily indebted to both First Macon and AS&T. Both banks had given the bankrupts sizeable secured loans—First Macon's totalled $750,000; AS&T's totalled at least $300,000. In addition, certain of these corporations had maintained checking accounts at both banks and, though a "kiting" scheme, had managed to overdraw their accounts at AS&T by over one million dollars. Of that amount, according to AS&T, approximately $299,000 was on deposit in the corporations' checking accounts at First Macon when the corporations became insolvent.

In order to protect its loans to the corporations, however, First Macon, upon learning of the corporations' bankruptcy, set off this $299,000 in repayment of these loans. It was permitted to do this by the checking account agreement between the corporations and the bank.

But AS&T immediately objected. Its position was that First Macon had known before setting off the $299,000 that the money rightfully belonged to AS&T and that therefore First Macon was not entitled to keep the $299,000. See generally Banks—Application of Deposits, 8 A.L.R.3d 235, 239 (1966). Among other things, First Macon denied that it knew this at the time of the setoff.

But matters grew worse. The banks soon discovered that each had given one of the corporations a $300,000 loan and that each loan was secured by an interest in the same property. AS&T and First Macon then also began disputing whose security interest had priority.

Argument over these matters continued for some months. Finally, in order to avoid extended litigation, the banks entered into a settlement agreement. Essentially, the terms of the agreement were as follows:

(1) Both parties:

  (a) gave up their claims to the $299,000, and

  (b) gave up their claims to the disputed secured property;

(2) First Macon:

  (a) represented that it had not known at the time the $299,000 was set off that the money rightfully belonged to AS&T, and

  (b) agreed to transfer to AS&T its security interest in the disputed property;

(3) AS&T:

  (a) agreed that First Macon have the right to the disputed $299,000,

  (b) agreed to transfer an additional $5,100 to First Macon, and

  (c) agreed to indemnify First Macon for losses sustained in the sale of certain of the bankrupts' other secured property which continued to be held by First Macon, but only up to $225,000.

Shortly after the agreement was signed, AS&T gave First Macon the $5,100 and also full control over the $299,000. First Macon, on the other hand, gave AS&T its security interest in the disputed property; AS&T subsequently sold the property for approximately $318,000.

After a substantial period of time, First Macon sold the property for which AS&T had agreed to indemnify the Georgia bank. However, in doing so, First Macon claims, it incurred a loss of over $300,000. It therefore asked AS&T for indemnification of $225,000. AS&T refused. One of the reasons it gave was that, since entering into the agreement, it had discovered that First Macon had actually known at the time the $299,000 was set off that the money belonged to AS&T. First Macon denied the charge. This suit, and the counterclaim

and defense of fraud which are at issue at this time, resulted.

## B.

In support of its motions to dismiss and to strike, the plaintiff argues that a necessary element of the defense of fraud and of an independent action for rescission based on fraud, is that the defrauded party have made an offer to restore the benefits received under the contract. First Macon argues that Georgia law controls on this question and that section 20–906 of the Georgia Code strictly provides that:

> . . . [a] contract may be rescinded at the instance of the party defrauded; but in order to rescind he must promptly upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value. [Ga.Code Ann. § 20–906 (1965)]

AS&T does not believe that Georgia law should be applied to this issue, but argues that it is not necessary to decide the question, since section 20–906, as interpreted by the Georgia courts, is not absolute, and since Georgia courts, like other courts, would make an exception to the rule in the circumstances of this case. This Court agrees.

■ It is clear that, as Georgia courts have interpreted section 20–906, this provision is simply a codification of the general common law rule in all jurisdictions that an offer to restore benefits received is a necessary prerequisite for a defense of fraud or an independent action for rescission based on fraud. *Bankers Health & Life Ins. Co. v. Griffeth*, 59 Ga.App. 740, 1 S.E.2d 771 (1939). See 17 *Am.Jur.2d* Contracts § 512 (1964). It is also clear that Georgia courts, like other courts, view the rule as:

> . . . wholly an equitable one; impossible or unreasonable things which do not tend to accomplish equity in the particular transaction, are not required. [*Sloane v. Shiffer*, 156 Pa. 59, 27 A. 67, 68 (1893), *quoted in* 12 *Williston, Contracts* § 1530 at 650 (3d ed. Jaeger)]

See, *e. g., Bankers Health & Life Ins. Co. v. Griffeth, supra*, at 773. Therefore, the Court must look to the equities on each side to determine if tender is necessary in this case.

■ On the side of requiring an offer of restoration, no compelling reason can be found. First Macon has indicated no interest in the particular property it transferred to AS&T. And it has made no claim of irremediable loss if the value of what it has given to AS&T is not returned at this point.

But a compelling reason does exist for not requiring an offer of restoration. The sole benefit that First Macon conferred on AS&T was that it gave up its claim to the disputed secured property. AS&T cannot, of course, return First Macon exactly to the status quo in this matter because the underlying property has been sold. Nor can the Court determine the value of what First Macon gave up without becoming entangled, at this early stage, in the merits of the dispute. The Court believes the better course, one which might avoid this problem altogether, and one which Georgia and other state courts would in all likelihood take, would be not to require an offer of restoration at this time.

## III.

In sum, the Court finds that First Macon's motions to dismiss the counterclaim and strike the defense of fraud must be denied.

It is so ordered.