107 F.3d 922
 323 U.S.App.D.C. 289
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Dorothy BOYD, et al., Appellants,
v.
Carol M. BROWNER, Administrator U.S. Environmental
Protection Agency and Arthur Williams, Lieutenant
General, U.S. Army Corps of Engineers, Appellees.
 No. 95-5361.
 United States Court of Appeals, District of Columbia Circuit.
 Oct. 29, 1996.
 
 Before WILLIAMS, GINSBURG and RANDOLPH, Circuit Judges.
 
 JUDGMENT
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by the Court that the order of the District Court is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a).
 
 
 4
 Plaintiffs owned single-family houses developed by Carver Terrace, Inc., in Texarkana, Texas, on a tract of land that had been used for wood treatment purposes. In 1980 the Texas Department of Water Resources found that the tract had been contaminated with chemicals commonly used to preserve wood. The EPA placed the Carver Terrace site on the National Priorities List in 1984 pursuant to its authority under the Comprehensive Environmental Response, Compensation and Liability Act of 1980. 42 U.S.C. § 9620(d)(2). Initially, the EPA decided to treat the soil and the ground water for contaminants but to allow the residents to continue living on the site. On review of the proposed EPA remedy, however, Congress appropriated $5,000,000 to relocate the residents of Carver Terrace, Pub.L. No. 102-139, Title III, 105 Stat. 736, 764 (1991), and in the accompanying legislative history expressed an intention that the EPA should "relocate permanently all residents of the Carver Terrace Superfund site and acquire the property located therein...." H.R.Rep. No. 101-556, 101st Cong., 2d Sess. 49 (1990); S.Rep. No. 101-474, 101st Cong., 2d Sess. 106 (1990) ("The Committee concurs with the House in earmarking $5,000,000 for relocation assistance for residents and for the purchase of homes at the Koppers Texarkana Superfund site.").
 
 
 5
 The U.S. Army Corps of Engineers (the "Corps"), acting as agent for the EPA, negotiated the purchase of the Carver Terrace homes from the plaintiffs based upon appraisals aimed at calculating the pre-contamination value of the properties. In the course of the negotiations, the Corps sent a letter to all but one of the plaintiffs that included the following statement:
 
 
 6
 Your property is being acquired on behalf of the EPA. If we are unable to negotiate a direct purchase from you, it will be necessary to acquire the property through condemnation proceedings. This information is not to be considered a threat, but in our opinion, it is necessary that we provide it to you so that you are fully informed of the laws and procedures applicable to this acquisition program. Please be assured that we will make every effort to negotiate a fair settlement with you. Should it be necessary to acquire your property through condemnation proceedings, the property will be reappraised. The Department of Justice, who will represent the United States, has directed that the reappraisal be based on the value of the property in its actual condition, which would necessitate consideration of the fact that the property is located within an environmentally unsafe area. This, in all probability, would lower the appraised value of your property.
 
 
 7
 Joint Appendix ("J.A.") at 230-31. It appears that the Department of Justice did not issue any direction adopting the contaminated-value approach to the valuation of the plaintiffs' properties in condemnation.
 
 
 8
 By the end of 1992, all of the plaintiffs had executed contracts of sale conveying their property to the Corps. Many of the plaintiffs also applied for, and received, relocation benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 ("Relocation Act"), 42 U.S.C. § 4601 et seq., benefits which went to the additional cost of obtaining replacement housing and moving expenses.
 
 
 9
 The plaintiffs filed suit in federal district court for the District of Columbia challenging the contracts conveying their property to the Corps. They claimed that the threat to condemn their properties at post-contamination value, made both in the letter quoted above and in oral statements to some of the plaintiffs, was contrary to the intent of Congress, in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA"), and therefore that the contracts themselves violated the APA. Similarly, the plaintiffs contended that the threat to condemn at post-contamination value was racially discriminatory and therefore that the sales agreements themselves violated the guarantee of due process (and equal protection) in the Fifth Amendment and the prohibition against racial discrimination contained in § 804 of the Fair Housing Act, 42 U.S.C. § 3604(a).[1] Plaintiffs also challenged the benefits paid to them under the Relocation Act, claiming that under it they were entitled to higher payments for replacement housing. The district court granted summary judgment in favor of the government and the plaintiffs appealed.
 
 
 10
 At oral argument (and in an order to the parties before argument) we raised the question of whether this court had jurisdiction over the appeal, in light of 28 U.S.C. § 1295(a)(2), which, with certain irrelevant exceptions, provides that the Federal Circuit has exclusive jurisdiction over appeals from the district courts where the jurisdiction of the district court was "based in whole or in part" on the Little Tucker Act, 28 U.S.C. § 1346. The Tucker Act itself, 28 U.S.C. § 1491, creates jurisdiction in the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." For claims under $10,000, the Little Tucker Act creates concurrent jurisdiction in the district courts. 28 U.S.C. § 1346(a)(2). A claim that the plaintiffs were entitled to monetary relief because the Corps obtained the sales agreements by means of threats that violated the APA, the Fair Housing Act, or the Fifth Amendment would likely fall, in whole or in part, within the purview of the Tucker Act (and, for amounts under $10,000, the Little Tucker Act).
 
 
 11
 In their Third Amended Complaint plaintiffs requested both rescission of the sales contracts and "appropriate compensatory and punitive damages." J.A. 276. Plaintiffs now argue, however, that (as regards claims relating to the contracts, as opposed to ones under the Relocation Act) they expressly dropped any claim for damages and limited themselves to a request for rescission, pointing to a colloquy with the district court recorded at J.A. 316-18. Plaintiffs' brief on appeal also affirms that the only remedy that they pursued in the district court was rescission. Appellants' Brief at 44. Although some of these assertions were ambiguous, counsel for plaintiffs at oral argument very precisely stated that the plaintiffs sought only rescission, explaining that, in the event that after a judgment of rescission the government and plaintiffs failed to agree on new, higher prices for the land, plaintiffs' only remedy would be a separate action for damages (presumably under the Tucker Act or Little Tucker Act). We therefore find that plaintiffs' contract claim was exclusively for rescission of the sales contracts, not for monetary relief, so that the contract claim does not trigger application of 28 U.S.C. § 1295(a)(2).
 
 
 12
 Nor does the claim under the Relocation Act place the appeal under § 1295(a)(2), because that claim as presented on this appeal is frivolous. Section 203(a)(1) of the Relocation Act provides, in relevant part:
 
 
 13
 In addition to payments otherwise authorized by this subchapter, the head of the displacing agency shall make an additional payment not in excess of $22,500 to any displaced person who is displaced from a dwelling actually owned and occupied by such displaced person for not less than one hundred and eighty days prior to the initiation of negotiations for the acquisition of the property.
 
 
 14
 42 U.S.C. § 4623(a)(1). The regulations promulgated by the Secretary of Transportation pursuant to the Relocation Act, see 42 U.S.C. § 4633(b), provide for an administrative appeal of an adverse agency decision concerning relocation payments, including payments for replacement housing. 49 CFR § 24.10.
 
 
 15
 Exhaustion of administrative remedies is normally a prerequisite for judicial review. The plaintiffs did not file administrative appeals with the Corps, however, even though they were informed of the availability of administrative appeals and of the procedure that they were required to follow.
 
 
 16
 Plaintiffs argue in their reply brief that there was no requirement in the Relocation Act or in the regulations promulgated pursuant to the Relocation Act that they exhaust the administrative remedies available to them. Thus, following Darby v. Cisneros, 509 U.S. 137 (1993), they say that the exhaustion requirement should not apply. Plaintiffs failed, however, to make this argument in their initial brief on appeal, and they therefore have waived the argument. See Pennsylvania Electric Co. v. Federal Energy Regulatory Commission, 11 F.3d 207, 209 (D.C.Cir.1993).
 
 
 17
 Plaintiffs also invoke the futility exception from the exhaustion requirement, which is applicable in circumstances "where 'following the administrative remedy would be futile because of certainty of an adverse decision.' " Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 105 (D.C.Cir.1986) (quoting 3 K. Davis, Administrative Law Treatise § 20.07 (1958)) (emphasis added in the original). In support of the claim, they cite evidence showing that they were afraid of the health consequences of remaining in their homes, that some of them were told by representatives of the Corps that if they did not accept the replacement housing payments offered, they would not receive any payment at all, that "in light of their previous experience negotiating with the government for the sale of their homes, plaintiffs did not see any hope in further negotiations," and that some of the plaintiffs were unaware of their rights even though they had received letters informing them of the available administrative remedies. Appellants' Brief at 49.
 
 
 18
 None of these circumstances rises to the level of futility as it has been applied in this circuit. See Communications Workers of America v. American Telephone & Telegraph Co., 40 F.3d 426, 432 (D.C.Cir.1994) ("The futility exception is, however, quite restricted, and has been applied only when resort to administrative remedies is clearly useless.") (citations and internal quotations omitted). Oral statements to some of the plaintiffs by one of the Corps' negotiators and discouragement because of previous dealings with the Corps cannot support a conclusion of certainty of an adverse decision. Thus plaintiffs' action under the Relocation Act must be dismissed for failure to exhaust administrative remedies.
 
 
 19
 The possibility of recovery on the Relocation Act claim before the district court might seem, if it were deemed a Little Tucker Act claim,[2] to require application of 28 U.S.C. § 1295(a)(2), which covers appeals where the district court 's jurisdiction was based in whole or in part on the Little Tucker Act. But such a literal construction of § 1295(a)(2) would mean--by virtue of the section's "in whole or in part" language--that a Little Tucker Act claim, no matter how plainly dead, would shunt over to the Federal Circuit cases where the only live issues were ones for which that circuit's expertise was irrelevant.
 
 
 20
 Having found jurisdiction, we proceed to plaintiffs' rescission claim. Even assuming that the acts of the Corps rendered the contracts unlawful, rescission cannot be awarded where the plaintiff neither tenders what he received nor seeks the return of what he delivered. "A rescission is an avoidance of a transaction. Rescission will normally be accompanied by restitution on both sides." Dan B. Dobbs, 1 Law of Remedies § 4.3(6) (2d ed. 1993); see also United States v. Texarkana Trawlers, 846 F.2d 297, 304 (5th Cir.1988). The plaintiffs cite two cases in support of the proposition that the courts may order rescission even though the property exchanged under the contract is not returned to the original owners.[3] Delta Investing Corp. v. Moore, 366 F.2d 516, 520-21 (6th Cir.1966) (where defendant had fraudulently sold plaintiff a leasehold of negative value, which had terminated without fault on plaintiff's part, plaintiff could rescind transaction without offering the leasehold in exchange for the return of the consideration he had furnished); Dermott Land & Lumber Co. v. Walter A. Zelnicker Supply Co., 271 F. 918, 920 (8th Cir.1921) (in rescinding contract that had been partially executed, plaintiff was not required to give defendant credit for goods delivered by defendant to plaintiff at the higher value that plaintiff realized in resale of those goods). Neither case, however, presents an instance where the plaintiff neither offers to return the property received under the contract nor seeks restoration of the property delivered by him.
 
 
 21
 That is precisely the position of the plaintiffs in this case. They do not offer to tender back the money they received without an assurance that they will receive greater compensation immediately, District Court Opinion at 11, and they do not, and indeed cannot, seek the return of their Carver Terrace homes, which have been demolished. Regardless of whether the acts of the Corps were unlawful, the district court could not have awarded the remedy that plaintiffs purport to seek.
 
 
 22
 While in their Third Amended Complaint plaintiffs asserted claims to judgments declaring that defendants had violated the 5th Amendment, the Fair Housing Act and the APA, their brief before us appears to jettison that claim along with the claim for damages. Appellants' Brief at 3-4, 44. In any event, we know of no authority that enables a plaintiff to seek a "declaratory judgment" on a fully matured legal claim, thereby in effect seeking a ruling of liability alone, with no legal effect other than to resolve a key issue that is a predicate to success in a later lawsuit seeking damages. Cf. 10A Charles A. Wright et al., Federal Practice and Procedure al. § 2759, at 648 (2d ed. 1983) (pointing out that one of the factors militating strongly against exercise of discretion to entertain a declaratory judgment action is the likelihood that it will not settle the dispute between the parties but will merely engender piecemeal litigation).
 
 
 23
 As plaintiffs' lawsuit seeks only remedies that are unavailable, the judgment of the district court must be
 
 
 24
 Affirmed.
 
 
 
 [1]
 "[I]t shall be unlawful--(a) to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin."
 
 
 [2]
 It may be argued that there is jurisdiction independent of the Little Tucker Act under the analysis of Bowen v. Massachusetts, 487 U.S. 879 (1988), but we need not reach that issue in light of the analysis set forth in the text
 
 
 [3]
 The third case cited by the plaintiffs, First National Bank & Trust Co. v. American Security & Trust Co., 437 F.Supp. 771 (D.D.C.1977), is inapplicable since it concerns the issue of whether a party, as a necessary prerequisite for an action for rescission based on fraud, must offer to restore benefits received under the contract. It does not address the question of whether a court can ultimately award rescission without restoration of the property exchanged under the contract