ELISHA TATUM, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Knowingly to misrepresent a blind horse as sound (the horse's eyes being apparently good), and thereby to cheat and defraud a person swapping for the animal, is to commit the offense of being a common cheat and swindler, under section of the Code 4595.
2. The verdict is not contrary to law or to evidence.

Criminal Law. Cheating and Swindling. Before Judge KNIGHT. Milton Superior Court. August Term, 1876.

Tatum was charged with the offense of cheating and swindling, in this, that he induced one David Webb to exchange a mouse-colored mule, worth $125.00, for a blind black mule belonging to him, Tatum, which was worthless, by falsely representing that his black mule was sound in body, and his eyes good. The defendant demurred to the indictment because the facts alleged do not constitute such deceitful means and artful practices as make the defendant a common cheat and swindler under §4595 of the Code.

The demurrer was overruled, and the defendant excepted.

The jury found a verdict of guilty.

The defendant moved for a new trial because the court erred in overruling the aforesaid demurrer, and because the verdict was contrary to the law and the evidence.

The motion was overruled, and the defendant excepted.

H. P. BELL, for plaintiff in error.

C. D. PHILLIPS, solicitor general, for the state.

BLECKLEY, Judge.

1. Dead eyes that look alive are not false tokens, perhaps, and yet they may deceive as effectually as a skilfully executed work of art. They are a sort of counterfeit made by nature, and when offered in trade, with a representation of soundness, are apt to be accepted for what they appear to be. They were so accepted in the present case. The evidence shows they were perfect in appearance, and not to be distinguished by inspection from sound eyes. When the owner had passed his word that the animal was sound, there was no obligation upon the person dealing with him to resort to extreme or unusual tests; and, hence, the failure to verify the powers of sight, otherwise than by looking at the organs, was not blamable negligence. To trust to what was seen, fortified by what was said, was not folly, but reasonable confidence. A statute denouncing the use of false tokens would, probably, not reach this case — 2

Bish. Cr. Law, §119. But a statute against false pretences, would reach it—*Ib.*, §345 to §372. We are of opinion that each of these methods of cheating and swindling is intended to be made penal by the 4595th section of the Code of Georgia. It reads thus: "Any person using any deceitful means or artful practice (other than those which are mentioned and provided against in this Code), by which individuals, or an individual, or the public, are or is defrauded and cheated, such person so offending shall be deemed a common cheat and swindler, and, on conviction, shall be punished," etc. Now, to hold out, in trade, a mule which has eyes apparently good, and to say the mule is sound, knowing it to be blind, is to use deceitful means; and when the purpose in hand is to compass a gainful end, and the purpose succeeds in consequence of the use of these means, and when what is thus gained is lost by the other party to the transaction, it seems hardly questionable that such party is cheated and defrauded. The false eyes of the mule, and the false words of the man, induce him to part with his money or his property without getting value.

2. It is possible that the accused did not, himself, know that the animal was blind. Of course, if he did not, he was innocent. But there was evidence from which the jury could have inferred, and from which they did infer, that he had the requisite knowledge. We cannot be sure whether he had it or not, but we see no reason to distrust the conclusion at which the jury arrived. In respect both to law and evidence the verdict is good. Some people think it is "smart" to cheat in swapping horses.

Judgment affirmed.