CHENEY *et al. v.* POWELL.

A declaration alleging that S., C., L. and L. (L. and L. having the same name, one of them being solvent and the other insolvent) combined to defraud plaintiff by having the insolvent L. execute a lease to S. and C., covering premises to which none of them had title, and then by means of false representations to sell the lease to plaintiff, making him believe it was executed by the solvent L., the declaration further alleging that the fraud was successfully accomplished and the plaintiff thereby damaged, sets forth a cause of action against all the conspirators for the tort. Although the declaration does not expressly allege that the plaintiff was deceived by the fraudulent misrepresentations of the defendants, this was plainly implied, and the declaration is amendable so as to allege the fact expressly.

February 15, 1892.

Fraud. Contracts. Parties. Before Judge JENKINS. Laurens superior court. July term, 1891.

Action for damages, by Powell against Lowry sr., Lowry jr., Cheney and Strickland. The declaration contained the following allegations : Cheney and Strickland were operating a turpentine business in Laurens county, and after some negotiations between them and Powell for the sale of said turpentine farm, etc. to Powell, the trade was consummated, they selling and conveying to him, among other things, a lease to certain lots of land in Laurens county for turpentine purposes (specifying the numbers of the lots and the districts of the county), he paying them therefor $3,000. When the negotiations for the sale of said farm, etc. began, Cheney and Strickland did not have or hold the lease to these lots or any of them, nor was said lease in existence; but pending the negotiations, seeing that Powell was anxious to purchase a considerable quantity of land for

turpentine purposes, they conceived a fraudulent and illegal plan by which they afterwards defrauded and damaged him $5,000, and in collusion with the two Lowrys and with their direct aid and assistance, they together perfected and carried out said plan in the following manner: A few days before the consummation of the trade with Powell, Cheney and Strickland proceeded to the home of the Lowrys and proposed to Lowry sr. that if he would sign and make a lease to Holland, Strickland & Co. to the lots of land before mentioned, notwithstanding said lease would· be absolutely void, Cheney and Strickland could perfect a sale of the same to Powell, and if they succeeded in so doing they would give him one third of the amount derived therefrom; whereupon Lowry sr., though entering heartily into the scheme, refused to sign the lease for the reason that he was a man of financial responsibility and feared he might be held directly accountable thereon, and then stated that if the scheme would be as effectual he could procure Lowry jr., who bore the same initials as himself and was financially irresponsible, to sign and make same; whereupon it was agreed that this should be done, and in pursuance of the agreement Lowry jr. was informed of the entire fraudulent scheme, and he signed the fraudulent lease on the promise that he should receive $200 of the amount to be so fraudulently obtained from Powell. The lease purports to have been executed October 20, 1887, and made to Holland, Strickland & Co., a firm composed of one Holland and said Cheney and Strickland; whereas in fact it was executed on or about October 15, 1888, a considerable time after the dissolution of that firm by the death of Holland. To induce Powell to purchase the lease Cheney and Strickland represented and ·stated that it had been signed on the day therein set forth by Lowry sr., whom they declared was a man of financial responsibility and owned

title to all the lots mentioned therein, and to eleven other lots of land ; and that they had paid said Lowry for the lease $3,000, the amount specified therein. At the time of the making and signing of this lease neither. of the Lowrys had any title or color of title to the lots therein mentioned, nor any right to convey the same or the timber thereon in any manner ; and this was well known to Cheney and Strickland at the time they accepted the lease. Neither Cheney, nor Strickland, nor either of the Lowrys ever paid one cent for the lease,- but the making and signing of it, the representations to Powell and the actual sale of the lease to him all formed one complete scheme to defraud him, by which he was damaged $5,000. The lease was absolutely void, illegal and worthless, and Powell has received no profit or benefit therefrom, nor can he receive any, for the reason that none of the defendants had any title or interest in the land, and did convey no interest to him. After the payment by him of the $3,000 to Cheney and Strickland for the lease, Cheney and Strickland paid to Lowry sr. $1,000 as his third of the proceeds of the sale for procuring Lowry jr. to sign the lease, and Lowry sr. thereupon paid Lowry jr. $200 for signing it. Powell has made repeated demands on the defendants for the $3,000, but payment has been refused. Before Powell had fully ascertained the complicity of all the defendants in the scheme to defraud and injure him, he sued two of them, Cheney and Strickland, to recover the amount so illegally obtained from him, and not until the trial of the case was he fully apprised of all the illegal acts of the defendants ; whereupon he withdrew his case in order to bring it against all of the defendants, that the ends of justice might be more completely subserved. The prosecution of said suit was vigorously and stubbornly defended by Cheney and Strickland, and Powell has been damaged $1,000 in the expenses and costs in-

cident to the same. The defendants have acted in extreme bad faith, have been stubbornly litigious and have caused Powell great and unnecessary trouble and expense in employing counsel, attending court, and being deprived of the use of the amount so paid by him, etc.

MARTIN & SMITH and J. M. STUBBS, for plaintiffs in error.

GRINER & WADE, by HINES, SHUBRICK & FELDER, *contra.*

LUMPKIN, Justice.

The error assigned is the refusal of the court to sustain a demurrer to plaintiff's declaration. The contents of the declaration will be found in the reporter's statement. The grounds of the demurrer were, in substance: (1) That the declaration set forth no cause of action, and was vague, uncertain and indefinite. (2) That there was a misjoinder of parties, there being no allegation of any contract, agreement or conversation between plaintiff and the Lowrys, or that they did or said anything to contribute to carrying out the fraudulent scheme by which plaintiff was damaged. (3) That the declaration does not allege plaintiff has been evicted from the premises, or kept out of possession by a better outstanding title. (4) That the declaration fails to show that plaintiff exercised any diligence in making the contracts, and consequently the doctrine of *caveat emptor* is applicable.

1. The first ground of the demurrer is not well founded. The allegations of the declaration cover all the elements which, under the code, §§2958, 3174, give a right of action. It states there were willful misrepresentations of material facts made to induce plaintiff to act, and upon which he did act to his injury. There is an additional element essential to an action for deceit, viz. want of knowledge by the plaintiff that the representations were false. It must be shown that he was *deceived.* 5 Am. & Eng. Enc. of Law, 318, 327; 1 Bige-

low, Fraud, 466. While this fact is not stated in express terms, it is clearly implied. Although it is not in so many words alleged that plaintiff was ignorant of the falsity of the representations made to him by Chency and Strickland, it is alleged that he was ignorant of the fraudulent conduct of the Lowrys and of the conspiracy in regard to the lease until after suit had been instituted against Cheney and Strickland; and this being true, it would necessarily follow that he was deceived by the representations of Cheney and Strickland. Besides, he alleges that he was *defrauded* by these representations, which implies that he was deceived by them, for he could not have been defrauded if he had known the representations were false.

In support of this ground of the demurrer, it was contended here that this was really a suit to rescind a contract and recover money had and received thereon, and yet the plaintiff in his declaration made "no offer of restoration." In a case where rescission is prayed for, the rule is that the plaintiff cannot claim to have his money back without restoring, or offering to restore, the fruits of the contract. This is not such a case. The action treats the contract as one into which plaintiff was induced to enter by defendants' fraud, and seeks to recover the damages thus sustained. Besides, there is really nothing to restore. The lease being fraudulent, void and valueless from its inception, and the defendant having no title or color of title, the plaintiff obtained nothing. The perpetrators of the fraud had no equity which would entitle them to demand a tender of anything as a requisite to this suit. It would be a mere farce to require plaintiff to offer back the worthless paper, and he should be allowed to proceed with his case, accounting, of course, for whatever value, if any, he may have derived from the possession of the premises, or showing that there was none.

2. To the ground of the demurrer alleging a mis-

joinder of parties, it is sufficient to reply that the action is in tort, and the declaration alleges a conspiracy. In such cases it is optional with the plaintiff to sue all the conspirators or one of them only, and recover the entire damages from that one. Cooley, Torts, 124, 125, 133. It is argued that no privity between plaintiff and the Lowrys is alleged, inasmuch as the plaintiff shows no contract, agreement or conversation between himself and the Lowrys. The allegation of conspiracy is sufficient to show privity. One who makes wilfully false representations to be fraudulently used by another as an inducement to a third to enter into a contract with the party repeating them, is as much guilty of a deceit as the latter, and is equally liable to the party deceived. *A fortiori,* where one executes a void contract fraudulently intending it to be used by another as a basis of a contract with a third party, he will be liable to the latter, jointly with the person so using the void contract, if injury to the third person is thus occasioned.

3. Nor was it necessary to allege eviction. The action sounded in tort for the deceit, and not in contract. It is unlike a suit for a breach of warranty of title to land, which need not allege any fraud whatever in the defendant. This action is brought to recover damages for a tortious injury fraudulently perpetrated on the plaintiff by deceitfully obtaining his money for something absolutely valueless, and so known to be by defendants when the wrong was done. 1 Bigelow, Fraud, 527 *et seq.*; Parham *v.* Randolph, 4 How. (Miss.) 435, 451.

4. The doctrine of *caveat emptor* does not apply where a fraud of this character has been committed. Certainly the perpetrators of a fraud should not be permitted to set up as a defence the plaintiff's reliance upon their good faith and honesty. 1 Bigelow, Fraud, 528; Kerr, Fraud & Mistake, 81; Parham *v.* Randolph, *supra.*

*Judgment affirmed.*