## RYAN v. THE STATE.

1. While ignorance of the law can not be pleaded as a defense in actions for damages, or as an excuse for crime, yet knowledge of. the law for all intents and purposes will not be imputed to every person.
2. Where a prosecutor in a pending warrant or indictment, knowingly and with intent to defraud and cheat, falsely pretends to the wife of the accused that as prosecutor he has the power to compromise the crime therein alleged against her husband, and thereby deceives her, and by means of this false pretense and a promise to settle the prosecution obtains money from her, and there is a breach of the promise, such prosecutor is guilty of being a common cheat and swindler under section 670 of the Penal Code.

Argued February 22, — Decided April 12, 1898.

Accusation of cheating and swindling.    Before Judge Berry. Criminal court of Atlanta.    December term, 1897.

*C. W. Flake*, for plaintiff in error.
*James F. O'Neill, solicitor*, contra.

Fish, J.    An accusation in the criminal court of Atlanta, charging D. W. Ryan with being a common cheat and swindler, was as follows:    "State of Georgia, County of Fulton, City of Atlanta.    I, Emma L. Mallory, in the name and behalf of the citizens of Georgia, charge and accuse D. W. Ryan, of the county and State aforesaid, with the offense of misdemeanor; for that the said D. W. Ryan, in the county and State aforesaid, on the        day of August, eighteen hundred and ninety-seven, did commit the offense of being a common cheat and swindler, in this, that on the 14th day of August, 1897, Joseph Mallory, husband of affiant, being imprisoned in Fulton county jail under a warrant or indictment charging him with burglary and the said D. W. Ryan being prosecutor in said case, he, the said D. W. Ryan, stated to affiant that he was prosecutor in said case and as such prosecutor he could and would have him, the said Joseph Mallory, released and discharged from said charge and imprisonment, if she, the said Emma L. Mallory, would pay to him the sum of fifty dollars.    That affiant, relying on said statement of the said Ryan and believing that he could and would release her said husband as he agreed, paid to him, the said Ryan, the said fifty dollars, after which the said Joseph

Mallory was in Fulton superior court convicted on said charge of the offense of larceny from the house and sentenced to six months labor on the public works of said county, where he is now serving out his said sentence.   That in making said statement to affiant the said Ryan knew the same to be false and knew that he could not release the said Joseph Mallory as agreed, and he made said statement to affiant with intent to defraud and cheat her, and he did cheat and defraud her out of the sum of fifty dollars, contrary to the laws of said State, the peace, good order and dignity thereof.

"December Term, 1897.   Emma L. Mallory, Prosecutor.

"Criminal Court of Atlanta.   J. F. O'Neill, Solicitor."

The accused demurred generally to the accusation, which demurrer was overruled.   There was a verdict of guilty, and the accused moved for a new trial, on the grounds, that the verdict was contrary to law and evidence; "that the court erred in not quashing the indictment on demurrer," and "that the court erred in not charging, upon request of counsel, that the prosecutrix was chargeable with notice of the law that a felony could not be compounded."   A new trial was denied, and to this ruling exception is taken.

If Ryan, the accused, knowingly and with intent to defraud and cheat the prosecutrix, falsely pretended to her that he, as the prosecutor in the warrant or indictment against her husband, had the power to compromise the crime therein alleged against him, and thereby deceived her, and by means of this false pretense and a promise to settle the prosecution against her husband, obtained fifty dollars from her, and there was a breach of such promise, then the accused is guilty of the offense of cheating and swindling, under section 670 of the Penal Code, which reads as follows: "Any person using any deceitful means or artful practice, other than those which are mentioned in this Code, by which an individual, or the public, is defrauded and cheated, shall be punished as for a misdemeanor."   This section is a statutory extension of the common law of cheats, and is designed to make penal cheating and swindling by false pretenses as well as by false tokens.   The vital question made in the present case is, did the accused make a false pretense to

the prosecutrix by which she was deceived and defrauded? If she actually knew, or if under the law she was conclusively presumed to know, that the accused did not have the power to settle the prosecution against her husband, then she was not deceived by the representation of the accused that he could do so. One can not be deceived by a representation made to him which he knows to be false. The prosecutrix had no actual knowledge that the accused could not compromise the offense charged against her husband. She testified that she believed and acted upon the representations of the accused, and paid him fifty dollars to " bring her husband out." This testimony shows, therefore, that she was actually deceived by the false pretense. Was she deceived in a legal sense? In other words, can it be said that a knowledge of the law was to be imputed to her, and therefore that it was to be conclusively presumed that she knew that the accused could not compound a felony against her husband? Such an implication, in our opinion, would be a misapplication of the maxim, ignorantia legis neminem excusat, relied upon by counsel for plaintiff in error. While it is true that the law will not permit the excuse of ignorance of the law to be pleaded for the purpose of exempting persons from damages for torts, or for breach of contract, or from punishment for crimes committed by them, yet knowledge of the law for all intents and purposes will not be imputed to every person. Brock *v.* Weiss, 44 N. J. L. 241.

In the case of Queen *v.* Mayor &c. of Tewkesbury, L. R., 3 Q. B. 629, where the question was, whether the mere knowledge on the part of the electors of the borough of Tewkesbury, who voted for B. for town councilor, that he was mayor and returning-officer of such borough, amounted to knowledge that he was disqualified for election, thereby causing their votes to be thrown away, &c., Blackburn, J., delivering the opinion, said: . "Every elector in the borough must have known that Blizard was the mayor, and every elector who saw him presiding at the election must have known as a fact that he was the returning-officer, and every elector who was a lawyer, and who had read the case of Reg. *v.* Owens [28 L. J. (Q. B.) 316], would know that he was disqualified. From the knowledge of the fact

that Blizard was mayor and returning-officer, was every elector bound to know as matter of law that he was disqualified? I agree that ignorance of the law does not excuse. But I think that in Martindale v. Falkner [2 C. B. 719, 52 E. C. L. R. 719], Maule, J., correctly explains the rule of law. He says: 'There is no presumption in this country that every person knows the law; it would be contrary to common sense and reason if it were so. In Jones v. Randall [1 Cowper's Repts. 37], Dunning, arguendo, says: "The laws of this country are clear, evident, and certain; all the judges know the laws, and, knowing them, administer justice with uprightness and integrity." But Lord Mansfield, in delivering the judgment of the court, says: "As to the certainty of the law mentioned by Mr. Dunning, it would be very hard upon the profession if the law was so certain that everybody knew it; the misfortune is, that it is so uncertain that it costs much money to know what it is even in the last resort." It was a necessary ground of the decision in that case, that a party may be ignorant of the law. The rule is, that ignorance of the law shall not excuse a man, or relieve him from the consequences of a crime, or from liability upon a contract. There are many cases where the giving up a doubtful point of law has been held to be a good consideration for a promise to pay money. Numerous other instances might be cited to shew that there may be such a thing as a doubtful point of law. If there were not, there would be no need of courts of appeal, the existence of which shews that judges may be ignorant of law. That being so, it would be too much to hold that ordinary people are bound to know in what particular court such and such a practice does or does not prevail.' . . The case merely shews as a fact that Blizard was returning-officer, from which a lawyer would be aware that he was disqualified, and, in my opinion, the knowledge that Blizard was returning-officer does not in law necessarily involve the knowledge that he was disqualified." Mr. Lawson, in his valuable work on Presumptive Evidence, page 5, states the rule to be as follows: "Every one is presumed to know the law when ignorance of it would relieve from the consequences of a crime or from liability upon a contract"; and cites many cases to sus-

tain it. "The presumption that every person knows the law is often spoken of, but it is clear that there is no such general presumption. . . 'Is it not a mockery,' said Mr. Livingston, in his report on the Louisiana Penal Code, 'to refer me to the common law of England? Where am I to find it? Who is to interpret it for me? If I should apply to a lawyer for a book that contained it, he would smile at my ignorance, and pointing to about five hundred volumes on his shelves would tell me those contained a small part of it; that the rest was either unwritten or might be found in London or New York, or that it was shut up in the breasts of the judges at Westminster Hall. If I should ask him to examine his books and give me the information which the law itself ought to have afforded, he would hint that he lived by his profession, and that the knowledge he had acquired by hard study for many years could not be gratuitously imparted.' Certainty in the law has hardly increased since Lord Mansfield's time, and Mr. Livingston's lawyer would to-day point to a library of five thousand instead of five hundred volumes. We may, therefore, safely say with Mr. Justice Maule, 'There is no presumption in this country that every person knows the law; it would be contrary to common sense and reason if it were so.'" Lawson on Presumptive Evidence, 6.

In the case at bar it will be observed that the accused is not pleading his own ignorance of the law as a defense, nor the ignorance of the prosecutrix, but is attempting to shield himself from punishment by contending that the prosecutrix should not have been deceived by his false representation, because under the law she was bound to know of its falsity. He can not avail himself of such defense, for the reason that, as before stated, no such knowledge of the law is imputed to her. While this court held, in *Tatum* v. *State*, 58 *Ga.* 408, that " Knowingly to misrepresent a blind horse as sound (the horse's eyes being apparently good) and thereby to cheat and defraud a person swapping for the animal, is to commit the offense of being a common cheat and swindler, under section of the [Penal] Code [670]"; and in *Rainey* v. *State*, 94 *Ga.* 599 (by two Justices) that, "The evidence showing that the defects in

the mare traded by the accused to the prosecutor were patent, and that they were actually discovered by the latter before the trade was concluded, the conviction of the accused of being a common cheat and swindler was not warranted, although he represented the mare to be 'all right'"; and while it has been elsewhere held, that carelessness so gross as to amount to fraud estops the prosecutor from maintaining a prosecution for violation of the statute of false pretenses (2 Wharton's Crim. L. § 1189, and cases cited in note 3), yet the great weight of modern authority seems to establish the principle, that a person has a right to rely upon statements made to him, without personally investigating their truth or falsehood, and that it does not lie in the mouth of a wrong-doer to assert that a person ought not to have been deceived by a lie, told for the very purpose of deceiving him. Hawley & McGregor's Crim. Law, 221, and cases cited. Mr. Wharton says (2 Wharton's Crim. L. § 1186): "To cheat at common law, it is essential that the fraud should be latent. It was in part to meet this difficulty that the statute of false pretenses was passed, and under this statute it has been repeatedly held that it matters not how patent the falsity of a pretense may be, if it succeed in defrauding." To the same effect, Mr. Bishop says (2 Bishop's New Crim. L. §433): "Some of the older cases maintain that a false pretense, to be indictable, must be such as is calculated to mislead men of ordinary prudence—thereby ignoring the rights of the unfortunate from whom nature has withheld one of her choicer gifts; but later reflection has satisfied the tribunals that a weak mind is as much entitled to the protection of these statutes as a strong one." See also 2 Russ. Cr. (6th ed.) 519. In a number of cases it has been held that, in determining whether the pretense was calculated to deceive, it must be considered with reference to all the circumstances, and the intelligence of the person defrauded. Clark's Crim. L. 283, and cases cited in footnote 147. See also Hochheimer's Law of Crimes & Crim. Proc. § 631. Therefore, if, as frequently held, one who by his shallow device or silly falsehood works upon the weak-minded, the careless, and the credulous, and fraudulently obtains their property, can not set up as a defense that

the false pretense was not such an artful device as would impose upon a person of ordinary intelligence and prudence, we are unable to appreciate with what reason it can be contended that one who, knowingly and with intent to deceive, falsely represents to an ignorant woman that he, as prosecutor, has the power to settle a criminal charge against her husband, thereby defrauding her of her money, can successfully plead that he is not guilty of cheating and swindling, because she is presumed to know the law. The evidence shows that, as a matter of fact, she was ignorant of the falsity of such representation; its falsity was not patent, and the law did not impute knowledge of its falsity to her. After a most careful consideration, we are of opinion that there was no error in overruling the demurrer to the accusation, nor in refusing to give the charge requested. The evidence is sufficient to authorize the verdict, and the trial judge did not err in refusing to grant a new trial.

*Judgment affirmed. All concurring, except Cobb, J., absent.*