17819. COPELAND *v.* DUNEHOO *et al.*

1. In this suit against a deputy sheriff and the surety on his official bond, the allegations of the petition were sufficient to show a wrongful act committed by the principal defendant under color of his office, within contemplation of the bond.

2. It appearing from the petition that the officer was about to search for liquors in the plaintiff's automobile, in which she was riding, and that he was intending to arrest her for the offense of misdemeanor in the

Arrest, 5 C. J. p. 426, n. 95.
Damages, 17 C. J. p. 831, n. 56; p. 832, n. 57; p. 974, n. 20; p. 977, n. 34; p. 1006, n. 6 New, 8; p. 1007, n. 12 New.
Evidence, 22 C. J. p. 148, n. 67.
Sheriffs and Constables, 35 Cyc. p. 1977, n. 79.
Smart-Money, 36 Cyc. p. 496, n. 21.
Statutes, 36 Cyc. p. 1167, n. 98, 99, 1.

transportation of such liquors, if any were found, and that her chauffeur, on discovering the officer, sped the automobile in flight, and that the officer thereupon pursued the automobile and its occupants and shot at the plaintiff several times with a pistol, some of the bullets barely missing her, and that his conduct in shooting at her is the wrong complained of, the petition made a case for the recovery of "smart-money," i. e., punitive damages, without an allegation of actual damage.

3. Where the facts narrated in the petition are sufficient to authorize the inference that the wrongful acts complained of were in bad faith, it is unnecessary to so characterize them by express allegations. In a case of this sort, any arbitrary omission by the officer to do that which is required of him by law, or any conscious disregard of the limitations upon his authority, would amount to "bad faith," within the meaning of that term as employed in section 299 of the Civil Code (1910). The petition set forth a cause of action, and there was no merit in any ground of the demurrer. The court erred in dismissing the action.

DECIDED MAY 12, 1927.

Complaint; from city court of Floyd county—Judge Bale. November 27, 1926.

Application for certiorari was made to the Supreme Court.

*Porter & Mebane,* for plaintiff.

*Willingham, Wright & Covington,* for defendants.

BELL, J. Mrs. John Copeland brought suit against Henry Dunehoo, deputy sheriff of Floyd County, and Fidelity & Deposit Company of Maryland, for a breach of Dunehoo's official bond to the sheriff, on which the company was surety. The court sustained general and so-called special demurrers filed by the defendants, and the plaintiff excepted.

The plaintiff laid her damages at $1000, and by her petition made the following case: The bond sued on was conditioned for the faithful performance by the principal of all his duties as deputy sheriff during the term of his appointment, and was in full force and effect at the time of the wrongs complained of. The petition alleged, that on December 17, 1925, Dunehoo, as deputy sheriff of Floyd County, was stationed at Lindale, and it was one of his special duties as such officer "to ferret out and arrest persons engaged in the violation of the prohibition law of the State of Georgia;" that as such deputy sheriff, on said date, some person, whose name is unknown to the petitioner, informed said deputy sheriff that petitioner, who lived a few miles south of Lindale, had gone to Cedartown in an automobile for the purpose of securing a quantity of intoxicating liquor, and that petitioner would return to her home, with said intoxicating liquor in said automobile,

in the early part of the evening of said date; . . that thereupon said Henry Dunehoo, for the purpose of seizing said liquor and arresting . . petitioner, and acting under the color of his office and in his official duty as deputy sheriff, went to petitioner's home and secreted himself behind a tree, and shortly after dark . . petitioner returned to her home, and just as she had gotten in her yard some one, to her at that time unknown, ran from behind the tree with a pistol in his hand, and hollered, 'Halt'; . . that the son of . . petitioner was driving the automobile in which she was driving, and, for the purpose of fleeing from said person who ran from behind said tree with said pistol, started to drive said automobile hurriedly away from petitioner's home; . . that thereupon said deputy sheriff, who had been hidden behind said tree as aforesaid, ran up to and towards said automobile where petitioner was riding, and with said pistol, a weapon of death, fired five bullets at . . petitioner, two of the said bullets passing through the door of said automobile and within an inch or two of the front part of the plaintiff's body, barely missing her, and two of said bullets within a few inches of the rear of her body, barely missing her, and one of said bullets, the fifth one, would have gone through petitioner's body if it had not hit an object in the pocket of said car door; . . that thereupon said son of . . petitioner stopped said automobile, and said Henry Dunehoo, deputy sheriff as aforesaid, came up to said automobile and arrested petitioner for possessing intoxicating liquor, and examined the place in said door where one of his bullets lodged, and told petitioner that if he had had his 'big gun' that he would have 'put a hole' through her, searched said automobile, and found no intoxicating liquor therein, and petitioner avers that she nor anyone else in said automobile had had any intoxicating liquor therein.

"Petitioner shows that the said deputy sheriff had no right to shoot at her, that she had committed no felony, and that his said act of shooting at her was wrongful and illegal; and that even though said deputy sheriff was in the performance of his duty as an officer of the law, in ferreting out an alleged violation of the prohibition law, and in arresting said petitioner for a violation of the prohibition law, and even though said officer was engaged in an act under the color of his office and by virtue of his office, that nevertheless, when said deputy sheriff shot at . . petitioner as

aforesaid, he was in the improper performance of his duties. Petitioner therefore says that the said Henry Dunehoo as such deputy sheriff breached the obligation of his said official bond so executed to said R. E. Wilson, sheriff as aforesaid, in that his said act of shooting at . . petitioner was not in the terms of the law, and not a faithful performance of his duties as is required by law, but in violation of law. Petitioner shows that the shooting at her by the said Dunehoo with said deadly weapon placed her in great mental fear for her life, and that as the bullets from said pistol of the said Henry Dunehoo whizzed all around her she suffered the most excruciating pain and agony. Petitioner shows that said acts of the said Henry Dunehoo were wilful and intentional, and petitioner is entitled to punitive damages from said defendant, for which she sues. For said reasons aforesaid, petitioner shows that the said Henry Dunehoo and the said Fidelity & Deposit Company of Maryland, under said official bond aforesaid, and as surety thereon, are liable to your petitioner in the sum of $1000 as aforesaid."

1. One who is aggrieved by the official misconduct of a deputy sheriff may at his option sue either on the sheriff's bond or on the deputy's bond. Civil Code (1910), §§ 294, 295. The bond of the deputy, who is the principal defendant in this case, subjected him and his surety to liability for any wrongful act committed by virtue of his office, as well as for his failure to perform or for the improper or neglectful performance of any of the duties imposed upon him by law. Civil Code (1910), § 291. The fact that a tort by the officer is disclosed does not render the action one ex delicto. Under the facts alleged in this case, the commission of the tort was a violation of the bond, and the petition is construed as an action for the breach thereof. We think it clearly charges a wrongful act done under color of office, for which the officer and his surety may be held liable on the bond, provided the damages sued for are recoverable. *Robertson* v. *Smith,* 16 *Ga. App.* 760 (85 S. E. 988); Civil Code (1910), § 767; *Fidelity &c. Co.* v. *Smith,* 35 *Ga. App.* 744 (134 S. E. 801), and cit.

2. The petition alleges no actual physical injury, and punitive damages only are sued for. Are such damages recoverable under the facts set forth in the petition? Section 299 of the Civil Code (1910) provides: "The measure of damages upon all official

bonds for the misconduct of the officer, unless otherwise specially enacted, shall be the amount of the injury actually sustained, including the reasonable expenses of the suit to the plaintiff, besides the costs of court, but in all cases when little or no damage is actually sustained, and the officer has not acted in good faith, the jury may find for the plaintiff an amount, as smart-money, which, taking all the circumstances together, shall not be excessive or oppressive." Although the damages which the plaintiff seeks to recover are not denominated as "smart-money," this term, as employed in the code provision quoted, seems to be substantially synonymous with "punitive damages." Black's Law Dictionary, 1102; 36 Cyc. 496; 25 Am. & Eng. Enc. Law (2d ed.), 1127. It is declared in the Civil Code (1910), § 4393, that "Exemplary damages can never be allowed in cases arising on contracts." A strong word is "never," yet we must construe this section in the light of all others relating to the same subject, and, on so construing it, we think that while the rule stated therein is a very strict and well-nigh universal one, it is still not a rule without any exception whatever. It seems that at least one exception is found in the provision for "smart-money" as contained in § 299. The Supreme Court impliedly so held in *Harris* v. *Black,* 143 *Ga.* 497 (4) (85 S. E. 742). There may be other exceptions (see Civil Code, § 2549; *Haber-Blum-Block Co.* v. *So. Bell Tel. Co.,* 118 *Ga.* 874 (4), 45 S. E. 696), but that question is unimportant in this case.

3. It is claimed by the defendants that the plaintiff is seeking to recover only for the "great mental fear for her life" and for her "pain and agony," and that these are not elements of recoverable damages in the absence of an additional and actual injury of some sort. Whether this contention is answered in the particular case by the provisions of section 299, the leading case in this State (*Chapman* v. *Western Union Telegraph Co.,* 88 *Ga.* 763, 15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183) on the doctrine which the defendants here invoke plainly differentiates such cases as involve an infringement of personal security or personal liberty and other wrongs which are essentially wilful. On page 768 it was pointed out that "An assault is an active threat against the body, an offer of violence endangering the person, which the law redresses even in its initial stage, thus protecting the physical per-

son more completely;" and on page 769 it was said: "In an action for false imprisonment, or for malicious arrest and prosecution, mental anguish has been held a proper subject for compensatory damages. Fisher *v.* Hamilton, 49 Ind. 341; Stewart *v.* Maddox, 63 Ind. 51; *Coleman* v. *Allen, 79 Ga.* 637 (5 S. E. 204, 11 Am. St. R. 449). Of course, such injuries are essentially wilful, and besides are violations of the great right of personal security or personal liberty. Reference has been made also to cases of passengers being put off railway trains, when the mortification, insult, and wounded feelings come in to enhance the damages. From the moment the passenger is ordered to get off, he is under duress; his body is not free to remain where he chooses and where it has the right to be. It is like an illegal arrest or imprisonment. In all these cases where personal security or personal liberty is infringed, the mental suffering seems to be a necessary component in the injury."

According to the allegations, the plaintiff had done no wrong, had committed no offense. The officer did not suspect her of having committed other than a misdemeanor; and even if she had been guilty of that offense, and was fleeing from arrest or detection, he had no right to shoot her or to shoot at her. *Paramore* v. *State, 161 Ga.* 166 (2) (129 S. E. 772) ; *Douglass* v. *State, 152 Ga.* 379 (4) (110 S. E. 168). Under the allegations of the petition, the officer committed against the plaintiff the offense of shooting at another (Penal Code, § 115), which is a form of aggravated assault. Penal Code, § 95. In a suit for such a wrong, "it is not necessary to allege and prove any pecuniary loss, or even actual physical injury, to warrant a recovery." *Pye* v. *Gillis, 9 Ga. App.* 725 (2) (72 S. E. 190). See also *Cole* v. *Atlanta & West Point R. Co.,* 102 *Ga.* 474 (31 S. E. 107) ; *Sappington* v. *Atlanta & West Point R. Co.,* 127 *Ga.* 178 (56 S. E. 311). For the purposes of this case, the officer is conclusively presumed to have known the law (*Ryan* v. *State,* 104 *Ga.* 78, 80, 30 S. E. 678) ; and this being true, his act of shooting at the plaintiff appears to have been wilful or wanton in fact, and in such cases the plaintiff is entitled to recover for fright and mental suffering without proof of other injury. *Williamson* v. *Central of Ga. Ry. Co.,* 127 *Ga.* 125 (4) (56 S. E. 119) ; *Hines* v. *Evans,* 25 *Ga. App.* 829 (105 S. E. 59) ; *Pullman Co.* v. *Strang,* 35 *Ga. App.* 59 (5, 6, 7) (132 S. E. 399).

While the cases cited above are all tort cases, they are not here irrelevant, because in this connection we are replying only to the contention that the plaintiff can not recover for mere fright or mental suffering. From what has been said, it is unnecessary to extend this discussion into a consideration of the facts that the automobile in which the plaintiff was riding was struck and that parts thereof very close to the plaintiff were pierced by several bullets. Did these facts amount to a battery upon the plaintiff; and if not, did they yet constitute an injury additional to the fright and mental pain, within the meaning of the above cases? See, in this connection, Throckmorton's Damages for Fright, 34 Harvard Law Review, 260, and cases cited.

4. Furthermore, it was not even essential to the statement of a cause of action that the plaintiff should have made the allegations respecting her fear and mental suffering, in view of the other facts appearing, although such allegations may, perhaps, be relevant, if proved, for the purpose of enlarging the recovery. The code says in effect that the principal and his surety on an official bond are liable for smart-money where the officer has acted in bad faith, even if *no damage* has been sustained, the recovery not to be excessive or oppressive, in consideration of all the circumstances. We think it clear that the petition shows bad faith sufficiently for the recovery of smart-money. The facts narrated in the petition would warrant the inference that the acts complained of were intentional and wilful, irrespective of the express allegations to that effect.

The exact inquiry, however, is not whether the acts were intentional or wilful, but whether they were in bad faith. The "bad faith" referred to in section 299 of the code may be of a different character from that which under certain conditions will authorize a recovery of damages and attorney's fees in suits on insurance policies. Civil Code (1910), § 2549. Counsel for the defendants say that "bad faith involves fraud, deceit, duress, or some such act, and is a state of mind," and with this we agree. See *Traders Insurance Co.* v. *Mann*, 118 *Ga.* 381 (7), 385 (45 S. E. 426). It is at least the opposite of good faith, and it could not well be contended that a person in good faith committed the offense of shooting at another. The inference of bad faith may be drawn from the facts set forth in the petition, even though there is no specific al-

legation upon the point. Any arbitrary omission by the officer to do that which is required of him by law, or any conscious disregard of the limitations upon his authority, would amount to bad faith within the meaning of that term as employed in section 299 of the Civil Code (1910). The defendants' counsel say that Mr. Dunehoo evidently believed what he had been told, namely, that the plaintiff would soon be passing his way and would be carrying liquors in her automobile. Even so, and assuming that this fact without more would have justified the proposed search and arrest (but see Carroll *v.* U. S., 267 U. S. 132, 45 Sup. Ct. 280, 69 L. ed. 543; *Johnson* v. *State,* 152 *Ga.* 271, 109 S. E. 662; *Pickett* v. *State,* 99 *Ga.* 12, 25 S. E. 608, 59 Am. St. R. 226; *Douglass* v. *State,* supra), the defendant knew that such conduct on the part of the plaintiff would amount to no more than a misdemeanor, and that he had no right to shoot at her merely because she fled. In our opinion, the petition set forth a cause of action, and contained none of the infirmities said by the demurrers to be inherent therein. There being no merit in any ground of the demurrers, the court erred in dismissing the petition.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*

---

NOTE.—The references to C. J. and Cyc., in footnotes to cases in this volume, were furnished by the publisher of those books to the State Publisher, and were inserted by direction of the Judges.