## 24674. ATLANTA LIFE INSURANCE CO. v. WALKER.

Decided February 22, 1936. Rehearing denied March 24, 1936.

*Green & Michael,* for plaintiff in error.
*Erwin, Erwin & Nix, Tolnas & Middlebrooks,* contra.

Broyles, C. J. Camilla Walker brought suit against the Atlanta Life Insurance Company, alleging, in part, that her son Robert Walker had $1000 insurance with the defendant company, payable to her as beneficiary; that her son died in Atlanta on October 22, 1933, while the insurance was in force; that petitioner did not learn of his death until some days subsequent thereto; that she went to Atlanta, identified the body as that of her son, had it interred at an expense of $85, and notified the defendant of the death; that "representatives of the insurance company presented themselves at her home in Athens, Georgia, and asked for the policy, stating that they had come to settle the insurance with her;" that "they presented a paper for her to sign, copy of which was not left with her;" that "she surrendered the policy to the representatives of the company;" that "upon receiving the policy and the paper which she had signed, the representatives of said company left her $50 in cash, stating that was all she was entitled to;" that "the insurance company is indebted to her in the amount of the policy, less the $50 heretofore paid her;" that "the representatives of the company practiced a fraud upon her in procuring said policy and in procuring her signature upon what they

claimed to be a release;" that petitioner "is a negro woman not versed in business transactions; and that she was overreached and imposed upon by the representatives of said company." The defendant demurred to the paragraphs of the petition alleging fraud, on the ground that the allegations of fraud were not sufficiently specific. The plaintiff amended her petition by adding the following: "Said representatives, of whom there were three, stated to petitioner that the defendant company, upon a thorough and searching investigation by it for the purpose of ascertaining the true identity of the body which had been identified by plaintiff as that of her son, had discovered and learned that said body was not that of her son, Robert Walker. Said representation was in fact false and made fraudulently to induce petitioner to execute the paper presented to her; said representation was made with knowledge of its falsity, and petitioner was deceived thereby and induced to sign and to refrain from demanding a return to her of said paper. Petitioner had been dealing with said company for many years; the company had a splendid reputation, and the three men who deceived petitioner had the appearance of men of outstanding character and quality, and petitioner did not, at the moment, question their veracity. And that she became uncertain in her mind by reason of the statements made by them, which were untrue and which were made to deceive her." The defendant objected to the allowance of this amendment. The court overruled the objections and allowed the amendment; and when the demurrer to the petition as amended was renewed, the demurrer was overruled. On the judgment allowing the amendment and overruling the demurrers the defendant assigns error. On the same date "the defendant made an oral motion to dismiss the petition, upon the ground that it showed $50 had been paid to the plaintiff in full settlement of her rights under the policy sued upon, and that it had not been tendered back to the defendant before the filing of the suit. The plaintiff amended her petition by alleging that on account of poverty she could not tender back the amount paid, and further that the release recited that it was in consideration of $51, and that only $50 of said amount had actually been paid to her." To the allowance of this amendment the defendant objected. The court overruled the objections and allowed the amendment. The defendant renewed its motion to dismiss the petition as amended, which motion the court

82

overruled. On "this judgment of the court, allowing the amendment and overruling the motion to dismiss," the defendant assigns error.

The petition alleges that the policy was in full force at the time of the alleged death of the insured. The release shows that the $50 paid the plaintiff purported to be $105.33, refund of premiums, less $55.33 cost of the investigation made by the defendant. Why the cost of the investigation, made by the company for its own interest, should be deducted from the refund of premiums paid to the plaintiff, is not shown. Neither is it shown why the cost of the investigation happened to be the exact odd number of dollars and odd cents that would leave even $50. This is a material consideration, since it purports to be a refund of premiums rather than a mere payment of $50 for a release, and since the transaction is alleged to be fraudulent. This $50 was paid to the plaintiff for a surrender of the policy. It is recited in the release that the one dollar (which the plaintiff alleged was never paid to her) was in full satisfaction of the claim she had filed for the death of her son. It must be borne in mind that the decision of the trial judge in no way determined that the plaintiff was or was not deceived by the representatives of the defendant, or that the body interred was or was not that of the plaintiff's son. It merely holds that the amendments were allowable, and that the petition as amended was not subject to the demurrer or the motion to dismiss. This leaves upon the plaintiff the burden of proving that she was deceived by the alleged false representations resulting in her signing the release, and that her son, the insured, was dead. It is well settled that fraud in the procurement of a release, if properly pleaded, subjects the instrument to investigation. If, as alleged, three representatives of the company went to Athens to persuade one negro woman, not versed in business transactions, to settle a $1000 claim for $50, and made false and fraudulent representations to her, and told her that the company, after a thorough and searching investigation, had discovered that the body interred was not that of her son, and caused her to "become uncertain in her mind by reason of the statements made by them" as to the death of her son, and so caused her to accept the $50 and sign a release, then such release should be set aside. The fact that the plaintiff previously went to Atlanta, and after seeing the body instructed the undertakers to

incur an expense of $85 for interment, would strongly indicate that she believed at that time that the body was that of her son rather than of a stranger. However, the facial expression of a person in death is sometimes changed and unnatural; and it is not unlikely that the plaintiff, recognizing this fact, and under the pressure of three men talking to her three and a half months after she had seen the body, and telling her that the company had made a thorough and searching investigation and ascertained that the body interred was not that of her son, became doubtful and "uncertain in her mind by reason of the statements made by them," and could have been deceived, and as a result thereof signed the release. The burden of proving this is on the plaintiff. The company insists that "if she has sufficient knowledge as to the identity of the dead man *to now say* that he was her son, she had this same information *on the day the release was executed.*" Such contention is a mere conclusion. We can not say that the plaintiff will rely upon her original identification only. It may be that after signing the release she obtained additional information that the body interred was that of her son. How she expects to prove it is not a matter of pleading, but is a matter of evidence which has no proper place in the petition. The plaintiff is not required to plead her evidence. The pleadings and not the evidence are now under consideration. In whatever manner the plaintiff may attempt to prove it, if she fails to prove to the satisfaction of a jury that her son is dead she can not recover; and if the company has really "ascertained the true 'identity" of the person interred to be one other than the insured, they should have no trouble in defeating her claim.

The plaintiff alleges that she was deceived by false and fraudulent representations of the defendant, which induced her to sign the release. This is purely an allegation of fact, and raises an issue of fact which this court has no authority to decide. Of course if the *petition* had shown that the plaintiff, *at the time of signing the release,* positively knew that the representations of the defendant were false, then she could not have been deceived by the representations of the defendant, and the release would be binding. But the petition does not show this. According to the allegations, three representatives of the company persuaded the plaintiff that she was mistaken in her original identification, she having become "uncertain in her mind by reason of the statements made by them;" and

84

approximately three and a half months had elapsed since she had seen the body, and there was no available opportunity for her to view the body at the time she signed the release. Furthermore, "she is a negro woman not versed in business transactions," and therefore more susceptible to the alleged imposition. "In determining whether the pretense was calculated to deceive, it must be considered with reference to all the circumstances, and the intelligence of the person defrauded." *Ryan* v. *State,* 104 *Ga.* 78, 83 (30 S. E. 678). The company might well say: "We made no false representations or deceived the plaintiff," and then let a jury decide the issue; but it does not lie in the mouth of the defendant to say: "The plaintiff should not have believed my false representations or been deceived thereby." As stated in *Cheney* v. *Powell,* 88 *Ga.* 629, 634 (15 S. E. 750), "Certainly the perpetrators of a fraud should not be permitted to set up as a defense the plaintiff's reliance upon their good faith and honesty."

Was the plaintiff excused from restoring the $50 received from the defendant? This amount was paid her "for the surrender of said policy for cancellation." She did surrender said policy for cancellation, and the company now has it, though the plaintiff contends, in substance, that it should not be canceled. She alleges "that by reason of poverty she is unable to tender back the fifty dollars, even though she was required so to do." The general rule is, that, in order to rescind, the one defrauded must, upon discovery of the fraud, restore or offer to restore whatever he has received by virtue of the contract. The plaintiff does not attempt to hold the $50 and also recover, in addition thereto, the full amount of the policy. Her petition alleges that "the insurance company is indebted to her in the amount of the policy, *less the $50 heretofore paid her.*" If the plaintiff is successful in recovering that which she seeks to recover, she will be entitled to the $50 and much more. "An exception to the general rule stated above is that 'a party is not obliged to return that which he is entitled to retain,' as alleged in the petition in this case, to wit, that the petitioner was fraudulently induced to sell and transfer her interest in an estate to others interested therein, for a sum much less than the amount due her as one of the heirs. Treating the allegations of the petition as true for the purpose of considering the demurrer, the plaintiff is entitled to many times the amount received by her upon

proper and just accounting and distribution of the estate. Equity does not require the useless procedure upon the part of the plaintiff to return a part of her just proportion only to have it included in the larger sum due to her and which she seeks to recover." *Farnell* v. *Brady*, 159 *Ga.* 209 (2) (125 S. E. 57); *Collier* v. *Collier*, 137 *Ga.* 658 (3) (74 S. E. 275, Ann. Cas. 1913A, 1110); *Taylor* v. *Colley*, 138 *Ga.* 41 (4) (74 S. E. 694); *Mann* v. *Showalter*, 145 *Ga.* 268 (3), 274 (3) (88 S. E. 968); *Ellis* v. *Ellis*, 161 *Ga.* 360, 365 (130 S. E. 681); *Georgia Railroad Bank &c. Co.* v. *Liberty Bank*, 180 *Ga.* 477 (12) (177 S. E. 803, 813).

The release also provided for the payment of the "further sum of $1 in full satisfaction of all claim or demand" the plaintiff might have. The petition alleges that this dollar to be paid in *satisfaction* of the plaintiff's claim was never paid. The release, as a whole, called for the payment of $51, all of which was never paid. In *Brunswick & Western Ry. Co.* v. *Clem,* 80 *Ga.* 534, 539 (7 S. E. 84), the court said: "The complaint is, that if there was a contract of accord and satisfaction partly performed, the plaintiff could not rescind as to the part performed without restoring the defendant to its original condition; and this is certainly the ordinary rule of rescission where it is not a matter of mutual consent. Code, § 2860 [Code of 1933, § 20-906]. But the rule does not apply to accord and satisfaction, because in order for there to be accord and satisfaction the accord must be executed. That is what makes the satisfaction. As long as the accord is executory, although it is partially performed, the original cause of action is not extinguished, and an action may be brought upon it, and the remedy for the defendant is to plead his part performance as satisfaction pro tanto. He gets credit for all he has paid upon it, but the right of action is not extinguished by an accord merely, without complete satisfaction, where the parol contract is that performance, not mere promise, is to constitute the satisfaction." In *Long* v. *Scanlan*, 105 *Ga.* 424, 426 (31 S. E. 436), the court said: "When a plea of accord and satisfaction is filed by a defendant, he must show *full performance* of its terms by himself and a full acceptance by the plaintiff. Unless he show this, the accord is no bar to a suit upon the original contract or claim. . . . The point is made that Mrs. Scanlan could not rescind the written agreement without restoring the status. . . She at least knew she had signed it

86

and had received $25 under it, and that she should have paid back that amount to Long or offered to do so; that until she had done so, she could not avoid the contract under which she had received the money. This we think is not true. The accord, not being *fully* executed, was no bar to her suit." (Italics ours.) In *Kennedy* v. *Maddox*, 15 *Ga. App.* 684 (84 S. E. 153), it was held that *"nothing* pertaining to an alleged accord and satisfaction must be left unsettled." (Italics ours.) An accord "is sufficiently executed only when *all* is done which the party agrees to accept in satisfaction of the pre-existing obligation." (Italics ours.) 1 C. J. 532, § 18. The $51 to be paid plaintiff as satisfaction for her rights was not paid in full, and therefore her right of action was not extinguished. The petition set out a cause of action, and the court did not err in allowing the amendments, overruling the demurrers, or in overruling the oral motion to dismiss.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*