27290. BANKERS HEALTH AND LIFE INSURANCE COMPANY *v.* GRIFFETH.

DECIDED FEBRUARY 2, 1939. REHEARING DENIED MARCH 23, 1939.

*Tolnas & Middlebrooks,* for plaintiff in error.

*William T. Ray, W. G. Cornett,* contra.

GUERRY, J. ■ The plaintiff in the court below filed suit against the defendant on an insurance policy for $175 in which the plaintiff was named as beneficiary. The petition and the evi-dence showed that the policy was issued on the life of Rufus Griffeth and was dated October 30, 1935. Rufus Griffeth died October 21, 1936, and the insurer, upon demand, refused to pay. The petition alleged that the insurer by paying to plaintiff $12.75 fraudulently induced plaintiff to sign a release. There were no demurrers. The defendant admitted the execution of the policy and that all premiums had been paid at the time of the death of the insured, but said that the policy was obtained through the false representations of the insured, in that he had stated in his application for the insurance that he had never had asthma, and that this statement was false. The application was not attached to or made a part of the policy issued. The defendant pleaded further that when presented with proof of death of the insured it showed that the insured had had asthma for some years before his death and that his answers were false, that it immediately tendered back the premiums, and that said sum was received by the beneficiary in full settlement of all claims under the policy. Under the evidence it was shown that the cause of the death of the insured was "bronchial pneumonia . . contributing secondary cause, asthma, chronic," and that the insured had had asthma for some years before his death. The application stated: "I have never had asthma." There was no evidence as to the circumstances under which the application was signed, or which demanded any finding that the insured knew he was making a false statement and that it was being fraudulently made.

The application, not being attached to and made a part of the policy, did not form a part of the insurance contract and did not constitute a warranty. Code, § 56-904. In *National Life & Accident Ins. Co. v. Falks,* 57 Ga. App. 384 (195 S. E. 463), it was said: "The application not having been attached to or made a part of the contract of insurance, the policy is not avoidable because of the falsity of representations made by the insured as to

her state of health and whether or not she had had any previous illness, even though such statements are as to facts material to the risk, unless the act of the applicant for insurance was fraudulent. In the present case the jury was authorized to find from the evidence that the insured did not knowingly and fraudulently make false answers and concealments in her application for the policy of insurance." This language may well be applied to the facts of the present case. See also in this connection *Torbert* v. *Cherokee Insurance Co.*, 141 Ga. 773 (82 S. E. 134); *Bankers Health & Life Insurance Co.* v. *Murray*, 22 Ga. App. 495 (96 S. E. 347); *Wilkins* v. *National Life & Accident Insurance Co.*, 23 Ga. App. 191 (97 S. E. 879); *Interstate Life & Accident Co.* v. *Bess*, 35 Ga. App. 723 (134 S. E. 804); *Mutual Benefit Health & Accident Association* v. *Bell*, 49 Ga. App. 640 (176 S. E. 124); *Metropolitan Life Insurance Co.* v. *Busby*, 42 Ga. App. 808 (157 S. E. 354).

■ In respect to the plea of accord and satisfaction, there was evidence to the effect that immediately upon the death of the insured the agent of the defendant went to the undertaker and the beneficiary and told them the policy was in force and would be paid. The undertaker agreed to bury the insured, and took a power of attorney to collect the policy, to repay him for expenditures made. Later on, the agent of the insured, a white man, went to the undertaker and offered to pay him $12.75 in full of the claim and the undertaker refused to accept that amount. He then went to the plaintiff, who was a negro and unable to read or write, and presented a paper to him and told him to touch the pen, which he did. He then told the plaintiff that $12.75 was all he would get out of it. He then wrote a check for $12.75 payable to the plaintiff and the undertaker, which he had the plaintiff indorse also by touching the pen. The plaintiff testified that he did not know what his rights were, that he accepted the word of the white man that $12.75 was all he could get, and that he wanted to pay the undertaker as far as he could. The plaintiff in this case was an ignorant, illiterate negro. The insured's agent was a white man. According to the evidence for the plaintiff this agent told him to sign, and he signed by touching the pen before he even knew what he was signing. The defendant pleaded that the false statements as to asthma in the application voided the policy.

It made itself the sole judge of this fact or contention, and according to the plaintiff's evidence told the beneficiary that $12.75 was all that was due under the policy. "In determining whether the pretense [statement of the agent in this case] was calculated to deceive, it must be considered with reference to all the circumstances, and the intelligence of the person defrauded." *Ryan* v. *State,* 104 *Ga.* 78, 83 (30 S. E. 678). "As stated in *Cheney* v. *Powell,* 88 *Ga.* 629, 634 (15 S. E. 750), 'Certainly the perpetrators of a fraud should not be permitted to set up as a defense the plaintiff's reliance upon their good faith and honesty.' " *Atlanta Life Ins. Co.* v. *Walker,* 53 *Ga. App.* 80, 84 (184 S. E. 776). The jury under the facts and circumstances were authorized to find that the plaintiff signed the purported release without knowing what he was signing, and because of the difference in race, position, education, and intelligence, he was induced or compelled to sign, and that such inducements and statements by the agent of the insurer were sufficient evidence to support the verdict found.

■ It is further contended that plaintiff is not entitled to recover because there has been no offer to return the $12.75 paid to him. "Restitution before absolution," is the general rule. Code, 20-906. The petition in this case sued for the "face value of the policy, less the amount paid by said company for said purported release." In passing upon a similar case it was said in *Atlanta Life Ins. Co.* v. *Walker,* supra: "An exception to the general rule stated above is that 'a party is not obliged to return that which he is entitled to retain.' " If there was no fraud shown in the present case the plaintiff would still be entitled to the $12.75. If the jury should find, as they did, that there was fraud, plaintiff is asking for the face value of the policy less the $12.75, and thus is not seeking to retain that to which he is not entitled. See citations in the *Walker* case, supra.

■ The remaining assignments of error are without merit. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*