## 28301. NATIONAL LIFE & ACCIDENT INSURANCE COMPANY *v.* MULLEN.

DECIDED NOVEMBER 20, 1940. REHEARING DENIED DECEMBER 12, 1940.

*Martin, Martin & Snow, George C. Grant,* for plaintiff in error. *Frank G. Wilson,* contra.

GARDNER, J. The beneficiary in this case brought suit on a policy of insurance on the life of his wife. The policy was for the face amount of $287 and was issued on January 30, 1939, and the insured died on March 10, 1939. The defendant in its answer admitted the issuance and delivery of the policy and the payment of premiums due, but denied that the policy was in force at the time of the death of the insured, because in an application for said insurance made January 19, 1939, which application was not attached to and made a part of the policy, the insured answered that she was in good health and that she had never had any one of a named list of diseases, and that in answer to the question, "What illness or accident have you ever had?" she stated "November,

1938; .malaria, one week duration, recovery complete;" and that after the death of the insured the insurer learned for the first time that she had been treated by Dr. Harrold in the Macon Hospital in March, 1938, for the same ailment or disease from which she subsequently died. She died from a hemorrhage complicated by the menopause, she being 48 years old. The defendant further answered that these conditions of the insured were deliberately concealed from the insurer when said application was submitted and the policy delivered, that a fraud was perpetrated upon it, and that in view of the terms and conditions of the policy its liability was limited to a return of the premiums, which it tendered.

Under the evidence submitted the jury was authorized to find that, when the agent took the policy and asked the questions contained therein which were written by the agent, the insured told the agent that she went to the hospital in March, 1938, and that she had had a local operation, and he told her that this "did not concern this policy at all," and that she also told the agent that she had had an appendix operation in Montgomery, Alabama, in 1935, and that she was in apparent good health at the time the application was signed. The jury was also authorized to find, the physician so testifying, that the physician examined the insured in March, 1938, "on account of bleeding of the womb," and found no cancer, and that he so told the insured, and that the operation in 1935 had no relation to the trouble she then had.

The following provisions of the policy were pleaded: "No obligation is assumed by the company prior to the date hereof. Except as elsewhere herein provided, if the insured is not alive or is not in sound health on the date hereof; or if before the date hereof, the insured has been rejected for insurance by this or any other company, order, or association, or has been a patient or an inmate of any institution for the treatment of physical or mental disease, or has undergone any surgical operation or has been attended by a physician; unless such rejection be specifically recited in the 'Space for Endorsements' in a waiver signed by the secretary, and unless it be shown by the claimant that no such institutional, surgical, or medical attention was for a serious condition; then, in any such case, the company's full liability shall be discharged by the payment of the sum of the premiums received hereunder," and "this policy contains the entire agreement between the company

and all the parties in interest. Its terms can not be changed or its conditions varied, except by a written agreement signed by the president or secretary of the company. No other person shall have the power to make or alter this contract, waive forfeitures, or receive premiums on this policy which are in arrears more than four weeks except as provided in paragraph (12)." A verdict was returned, finding for the plaintiff the face value of the policy and $75 as attorney's fees.

Where an application is not attached to and made a part of the policy of insurance, the policy is not avoidable because of the falsity of representations made by the insured as to the state of health and whether or not the applicant had any previous illness, even though such statements are as to facts material to the risk, *unless* the act of the applicant was fraudulent. *National Life & Accident Insurance Co.* v. *Falks,* 57 *Ga. App.* 384 (195 S. E. 463) ; *Bankers Health & Life Insurance Co.* v. *Griffeth,* 59 *Ga. App.* 740 (1 S. E. 2d, 771) ; *National Life & Accident Insurance Co.* v. *Williams,* 53 *Ga. App.* 677 (187 S. E. 145), and cit. In view of what was therefore a seeming conflict of authorities, this court sent certain certified questions to the Supreme Court which were answered in *National Accident & Health Insurance Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387). If the application is attached to and made a part of the policy the applicant is bound thereby irrespective of his knowledge of the falsity, if the answers were in fact false, except as stated in headnote 4 of the case of *National Accident & Health Insurance Co.* v. *Davis,* supra. The case of *Metropolitan Life Insurance Co.* v. *Alexander,* 43 *Ga. App.* 385 (159 S. E. 124), cited by plaintiff in error, may be compared with *Metropolitan Life Insurance Co.* v. *McAleer,* 43 *Ga. App.* 669 (159 S. E. 906) (in which latter case a certiorari to the Supreme Court was denied), as an illustration of the conflicting decisions.

This being a case where such application made was not attached to and made a part of the policy, a representation by the insured that she was in good health, will not avoid the policy unless it was shown that it was fraudulently made. The jury was authorized to find in this case that such statement, if untrue, was not fraudulent. Likewise, where it is shown that the agent taking the application was informed of the fact that the applicant had been to a hospital and that the doctor there told her that she had no

cancer and that her treatment was "local," such notice to the agent was notice to the company, which may amount to notice and estoppel. In *Johnson* v. *Ætna Insurance Co.,* 123 *Ga.* 404 (2) (51 S. E. 339, 107 Am St. R. 92), it is said, "Limitations in an insurance policy upon the authority of the agent of the company to waive the conditions of the contract of insurance are to be treated as referring to waivers made subsequently to the issuance of the policy." Consequently, notice to an agent taking the application which is not made a part of the policy is notice to the company, and may prevent the application of contrary provisions in the policy, it being said in the *Johnson* case cited above (page 410), "but this is not a question of waiver, so much as of notice and estoppel." See also *National Life & Accident Insurance Co.* v. *Cantrell,* 49 *Ga. App.* 368 (175 S. E. 543); *Interstate Life & Accident Insurance Co.* v. *McMahon,* 50 *Ga. App.* 543 (179 S. E. 132); *National Fire Insurance Co.* v. *Thompson,* 51 *Ga. App.* 625 (181 S. E. 101). Under the evidence in the instant case the cause of the death of this insured was "menopausal hemorrhage." She was 48 years old. The jury was authorized to find that the statements made in the application were not fraudulent, and that the agent taking the application was told all that the insured knew of her condition.

It is further contended that the liability of the insurer was, under the terms of the contract, limited to a return of the premiums paid. In support of this contention the following cases are cited: *Gray* v. *Life & Casualty Insurance Co. of Tenn.,* 48 *Ga. App.* 80 (171 S. E. 835); *Life & Casualty Insurance Co. of Tenn.* v. *Norton,* 51 *Ga. App.* 403 (180 S. E. 651); *Life & Casualty Insurance Co. of Tenn.* v. *Carter,* supra; *Hamrick* v. *Progressive Life Insurance Co.,* 59 *Ga. App.* 553 (1 S. E. 2d, 596). A comparison of the provisions construed in the policies under consideration in the above-cited cases with the provision in the policy here considered, will readily show the distinction between the two. In the cases cited, beginning with the *Gray* case, it will be seen that the policies provided: "Limitations of actions, . . the liability of the company shall be limited to a return of the premiums paid thereon, . . if the insured has suffered from [certain diseases] whether known to the insured or not." This was held to be a matter of contract limiting liability and was fully discussed in the *Carter*

28

case. The limitation placed in the policies then under consideration did not make the policies *void* as was pointed out in the *Carter* case in distinguishing between it and *Metropolitan Life Insurance Co.* v. *Hale,* 177 *Ga.* 632 (supra). In the *Hale* case the provisions of the policy stated that the company might declare the policy *void.* In the present case the policy declared that "no obligation is assumed" if, etc. Each of them, the *Hale* case and the present case, stated also that any claim under the policy should be limited to the return of the premiums. In answering the specific question here presented, it was said in the *Hale* case that the liability of the company was not limited to a return of the premiums. See (the same case) *Metropolitan Life Insurance Co.* v. *Hale,* 47 *Ga. App.* 674 (171 S. E. 306). It is apparent from the provisions in the *Gray* case and others cited, that the limitation-of-liability clause was one not dependent on notice or knowledge of the falsity of the representations made in the applications. The parties agreed that if certain conditions should be present the liability would be limited, irrespectively of knowledge. In the present case "No obligation is assumed" if the insured was not in sound health, etc. As was said in the *Gray* case, "There is, however, quite a distinction between avoiding a policy and limiting the liability thereon." Under the facts here the liability of the insurer was not limited irrespectively of the knowledge of the falsity of the answers.

Under the seeming conflicts which have existed prior to the distinctions made in the *Hale* and *Davis* cases, supra, we do not think that the contesting of the validity of this policy and the claim that the liability was limited thereunder amounted to bad faith. Judgment is affirmed, provided the attorney's fees awarded are written off within ten days after the remittitur reaches the trial court; otherwise, the case is reversed.

*Judgment affirmed on condition. Broyles, C. J.,* and *MacIntyre, J., concur.*